### HINES & KELLOGG v. FAYETTE SOULE.

Held, that the admission of L. against his title to a yoke of oxen, that they belonged to R., under whom the plaintiffs claimed, were not evidence against S. who, as sheriff, had attached them as belonging to L., though made before the attachment and while L. was in possession.

TRESPASS for taking a yoke of oxen. Plea general issue, and trial by jury.

On the trial in the county court, after proof of the taking, the defendant proved that he took the property, as constable of Fairfax, on a writ of attachment against one William Lawson, and as said Lawson's property.

The testimony detailed in the bill of exceptions tended, on the part of the plaintiffs, to prove that the oxen in question were the property of D. B. Rood, and had by him been let to Lawson, and that, subsequently, the plaintiffs hired them of Rood, and took them into their possession.

The testimony on the part of the defendant tended to show a sale of the oxen from Rood to Lawson. In the course of the trial, the plaintiffs offered to prove that Lawson, who was not offered as a witness, admitted, while he was in possession of the oxen, and after it was said he had bought them and before the attachment by the defendant, that Rood was the owner of them.

This testimony was objected to by the defendant, but admitted by the court.

The jury returned a verdict for the plaintiffs, and the defendant excepted to the decision of the court, admitting the admissions of said Lawson.

*H. R. & J. J. Beardsley* and *W. Wilson,* for defendant.

*T. Child* and *J. Rand,* for plaintiffs.

The opinion of the court was delivered by

BENNETT, J.—The only question raised upon this bill of exceptions, upon which the defendant relies, relates to the admissions of William Lawson. Were they admissible in evidence ? The defendant had attached the oxen, in question, as the property of Lawson, and he succeeds, *sub modo,* by the operation of law, to all his rights in them. It has, I conceive, been frequently decided, that such declarations of the vendor made before sale, as would be evidence against himself, are admissible against his vendee ; and as to this question, it is the same thing whether he succeeds to the rights of the vendor, by purchase or by operation of law. The ground seems to be, that the admissions come from a *privy in estate,* and consequently bind the successor. In contemplation of law, they come from the party himself, and of course are not thought to be exposed to the objection of being *hearsay evidence.* They have been thought to be, not *inter alios,* but *inter eosdem,* and, in this view, it would seem to me to be *immaterial* whether the person making them could be called as a witness or not.

The case of *Ivat* v. *Finch,* 1 Taunt. R. 141, evidently proceeded upon this ground. Though, in that case, the declarant was dead at the time of the trial, yet this was made no point in the case, and the admissibility of the declarations rested upon

other grounds.   The court say ;  " the admission supposed to
have been made by Mrs. W. was against her own interest, and
had the action been between Mrs. W. and the plaintiff, then
her acknowledgment that the property belonged to him
might have clearly been given in evidence, and therefore it
ought to have been received in that .instance, *because the
right of the lord of the manor depended upon her right*."
The admission of Mrs. W., a former owner of the property
in question, made while in possession, went to prove that
she had transferred her interest in it.   *Lady Dartmouth* v.
*Roberts*, 16 East. R. 334, is a leading case.  The action was
debt for not setting out tithes in a certain farm owned by the
defendant.   The questions involved in the case were, whe-
ther the farm was chargeable with the tithes, and if so, whe-
ther payable to the plaintiff's testator or the vicar of Butley.
The vicar had filed his bill against Leathley while owner, to
enforce his claim to the tithes, and in his answer Leathley
denied the right of the vicar, but insisted the tithes belonged
to the testator of the plaintiff, and the chancery suit was
dismissed.   Leathley then sold to defendant, and his answer
was admitted in evidence against the defendant.  Lord Ellen-
borough said " it was not only evidence, but strong evidence
against the defendant, and not *res inter alios acta*, but *inter
eosdem acta*."   The defendant stood in the same place with
Leathley by a derivation of title.   See also *Earl of Sussex*
v. *Temple*, 1 Lord Raymond's R. 310.

In *Bridge* v. *Eggleston*, 14 Mass. R. 245, the declarations
of the grantor, made before the sale, tending to prove that
the deed was a fraud upon creditors, were admitted against
his grantee.   So in *Norton* v. *Pettibone*, 7 Conn. R. 319,
the admissions of the grantee of the debtor, while owner and
in possession, that he purchased to defraud creditors, were
admitted against his grantee.

In *Jackson* v. *McCall*, 10 Johns. R. 377, the admissions of
the ancestor, while in possession, that the land was limited to
a given line, were received against the heir.

So it has been held that the admission of the ancestor, as
to the contents of a lost deed, were admissible against the
heir.   3 Hamm. R. 107.   In *Binney* v. *Proprietors &c., of
Hull*, 3 Pick. R. 503, on the question who was bound, by
prescription, to maintain a partition fence, the admissions of

the ancestor, under whom the plaintiff claimed, made while the ancestor was in possession, were received against the plaintiff. In *Jackson* v. *Bard,* 4 Johns. R. 230, in ejectment, the plaintiff was permitted to give in evidence, the admissions of the person, under whom the defendant claimed, made before sale, and while in possession, that his deed was *antedated,* so as to *overreach* the mortgage title of the plaintiff, from the same source. The court say ; " these declarations would have been good against the person making them, and are also competent evidence against all who claim under him."

So the admissions of the grantor, that his survey did not include the land in dispute, made before he conveyed, were received against his grantee. So upon a question of fifteen years *adverse* possession, the admission of a person in the chain of possession, that his possession was not adverse, is admissible against those who follow, claiming the benefit of the *prior* possession. So where the grantor showed a certain monument, while owner and in possession, as his place of beginning, this was held evidence against his grantee. 4 Serg. & Rawle, 174. 3 Conn. R. 286. 2 Penningt. R. 706.

In *Jackson* v. *Davis*, 5 Cow. R. 123, the plaintiff claimed under a given title, and it was held that the defendant, who claimed through a number of successive purchasers in fee, was as much affected by the acknowlegments by any of his predecessors, that they held by a lease from the same source from which the plaintiff claimed title, as he would have been if they had been his own. See also *Van Duzen* v. *Scissam,* 3 Johns. R. 499.

In *Gibblehouse* v. *Strong*, 3 Rawle's R. 437, the declaration of one, who held the legal estate by a deed in fee, that he held the estate in trust for one who had paid the purchase money, made before he had conveyed, was received to affect his grantee. This too in a case where the legal owner was living and within the reach of process and capable of being examined as a witness.

It was claimed, in this case, that he should be produced and sworn as a witness, but the court thought otherwise, and held his declarations admissible on the general principle that the admissions of the grantor are evidence against his grantee,

and, in this state, in the case of *Denton* v. *Perry*, 5 Vt. R. 382, the declarations of the grantor, made after the date and signing of the deed, but before the grantee's acceptance of it, (it having been lodged with the town clerk,) were held to be admissible against his grantee to impeach the deed, on the ground of fraud against creditors. See *Dorsey* v. *Dorsey*, 3 Har. & Johns. R. 410, and *Titus* v. *Myers*, 11 Wend. R. 533. It would seem to me, that, upon principle, the same rule should be extended to personal property in this respect, which has been applied to real estate, and this too without regard to the question whether the vendor is still alive and may be called as a witness, or not.

*Waring* v. *Warren*, 1 Johns. R. 342, puts the case of personal estate within the same reason. *De Forest* v. *Bacon*, 2 Conn. R. 633, which was trover for goods, is much like the present. The plaintiff claimed under an assignment in trust from one Judson to pay the debts of the plaintiff and of others. The defendant attached the goods as the property of Judson, upon the ground the assignment was fraudulent, it being claimed that there was no debt due from Judson to the plaintiff. To prove the debt, entries in the shop book of Judson, made before the assignment, were received against the defendant, inasmuch as the defendant claimed under Judson by the attachment. Swift, Ch. J. with whom the other judges concured, says; "the shop books would have been proper evidence between the plaintiff and Judson to prove the state of the accounts, and of course were proper evidence in this case to show the indebtedness of Judson to the plaintiff." I had supposed this rule had been acted upon to a great extent, though not with entire uniformity, both in this country and in England. In *Woodruff* v. *Whittlesey*, Kirby's R. 60, the evidence was received without objection, and *Walthol* v. *Johnson*, 2 Call's R. 275. *Johnson* v. *Patterson*, 2 Hawks' R. 183, *Coale* v. *Harrington*, 7 Harr. & Johns. R. 147, and *Guy* v. *Hall*, 2 Murph. R. 150, are a few among the many authorities in the American courts, for the application of the rule to personal property, *irrespective* of the fact whether the vendor could be called as a witness or not.

In *Harrison* v. *Vallance*, 1 Bing. R. 45, decided in 1822, S. C. 7 Moore, 304, in trover for a deed, it was held that the de-

clarations of the person, from whom the defendant had receiv-
ed it, were evidence against the defendant, and upon the
case of *Hunt* v. *Horn*, 2 Camp. 92, being mentioned as op-
posed, Park, J. said that was a mere *nisi prius* decision,
and had never been considered as law.

The same rule has been applied to choses in action, and
when the admissions are made before the assignment,
the rule seems to be of general application, with this ex-
ception, that it does not apply to negotiable paper, which
has been indorsed, before due, to a *bona fide* holder in the
due course of trade. Greenleaf's Ev. 220, 221, 222. *Shaw*
v. *Broom*, 4 Dow. & Ryl. R. 730. *Pocock* v. *Billing*,
2 Bing. R. 269. *Coster* v. *Symons*, 1 Carr. & Payne's R.
148. *Haddam* v. *Mills*, 4 Carr. & Payne's R. 486. In
*Barough* v. *White*, 6 Dowl. & Ryl. R. 379, and *Beauchap*
v. *Parry*, 1 B. & Adolph. 89, the evidence was excluded on
the ground that the paper could not be considered as *over-
due* when negotiated. If it had been, it was conceded the
rule would have been otherwise. See *Kimball* v. *Hunting-
ton*, 10 Wendell, 675. It has appeared to me that where
the purchaser is *in privity* with the rights of the seller, which
implies a successive relationship to the same rights of pro-
perty, and takes subject to the seller's defect of title, whether
applied to lands or personal property, it was most accordant
with principle to let in the declarations of the vendor, made
before sale and while in possession, not as *hearsay evidence,*
but as coming from a *privy* in estate, and, consequently, in
law, as from the party himself. But it cannot be contended
the decisions have been entirely uniform.

The case of *Warner & Co.* v. *McGary*, 4 Vt. R. 507,
was an action by the indorsers against the payee and indors-
or of a note upon a special indorsement, simply warranting
the note to be due. The admissions of Turner, made *after*
the note had been sold to the plaintiff, that he signed the
note, it is clear should not be received in a suit between the
indorsee and indorsor, to defeat the action. There was no
*privity* or *identity of interest* between Turner and the plain-
tiff. The plaintiff never had succeeded to his rights by a
derivation of title from Turner. The relation of seller and
purchaser had never existed between them. And the ques-
tion must have stood simply upon the ground that they were

declarations against the interest of the party making them, and exposed to the objection of being but mere *hearsay* evidence. I am aware that declarations made at the time some act is done, which are supposed to give character to it, and calculated to explain its nature and quality, and so harmonize with it as to make but one transaction, are a part of the *res gesta,* and are, for this reason, admissible.

This principle may include that class of cases where the declarations of a person in the possession of lands relate to the character or extent of the possession; but I do not well see how it can apply to matter of fraud, where the admissions of the grantor have been received, as in the case of *Bridge* v. *Egleston, Norton* v. *Pettibone,* and *Denton* v. *Perry ;* or to the admissions of the contents of a lost deed, or to the *antedating* of a deed, or to the declaration of a person, having a title by deed, that he in fact holds as trustee. In few of these cases, if in any, as it appears to me, do the declarations accompany an act which they are to character- ize. Cases of this description, and many more that might be named, I think, should be referred to the principle that the admissions of the predecessor bind the successor to the estate. I know of no such rule of law, that, in matters of fraud, the admissions of the supposed parties to it are admissible against other parties from the necessity of the case, as has been sometimes said. *Davis* v. *Spooner,* 3 Pick. R. 234, and *Jackson* v. *McChestney,* 7 Cowen's R. 360, are further illustrations of the principle, that the admissions of those under whom the party claims are admissible in evi- dence against him. It is needless to observe that the rule is not, and should not be, extended to cases in which the admis- sions were made after the declarant had parted with all his interest in and control over the property ; and in *Bullard* v. *Billings,* 2 Vt. R. 309, it is held, that it must appear affirm- atively, in order to affect the vendee with the declarations of the vendor, that they were made before sale.

In *Carpenter, Admr. of Taylor,* v. *Hollister et al.* 13 Vt. R. 552, which was ejectment, the defendants set up a record title from the plaintiff's intestate, through one Mackres to them, and it was held that the plaintiff could not give in evidence the admissions of Mackres, to a third person,

though made while in possession under his deed, that the plaintiff's intestate was *incompetent* to make a deed, when his deed was executed. It is a matter sometimes of considerable nicety to determine when the relation of predecessor and successor shall so hold between the declarant and the party as to render the rule applicable, and these difficulties arise in the main under the registry acts. In the case in the 13th Vt. R., Hollister held his title of record. The admissions of Mackres were to a stranger, and Hollister was in no way privy to them, when he purchased. The court, in that case, felt pressed with the consideration that, to permit a purchaser to be defeated in his record title by the private concessions of a former owner, made while in possession, would be to defeat, in a great measure, the beneficial effects of the registry system.

In the case now before us, Lawson might have been called as a witness by the plaintiff, and my brethren think he should have been, and that his admissions against his interests, made prior to the attachment and while in possession of the oxen, should not be received against the defendant. At first, I was inclined to a different result, but as unanimity of opinion is necessary to a decision in this case, I concur with them. The rule, that if a person is still living and can be a witness, he must be called, and that his admissions are not evidence against his vendee or successor, though made while in possession and against his title, is certainly sustained by many adjudged cases, and perhaps should be taken as the better opinion, and as the most salutary rule.

In New York, though the decisions are exceedingly conflicting, the cases of *Alexander* v. *Mahon*, 11 Johns. 135 ; *Hurd* v. *West*, 7 Cowen, 752 ; *Whitaker* v. *Brown*, 8 Wend. 490, and *Bristol* v. *Dana*, 12 Wend. 142, are in point in favor of the rule. *Fitch* v. *Chapman*, 10 Conn. R. 9, is full to the same effect. See also, *Barrett* v. *French*, 1 Conn. R. 354. *Hedger* v. *Horton*, 3 Carr. & Payne. 179.

The result is a reversal of the judgment of the county court, and the cause is remanded to that court for trial.

Judge Royce, having been detained, did not sit in this cause.