Hon. PIERPOINT ISHAM, } ASSISTANT JUDGES.
Hon. MILO L. BENNETT, }

---

FREDERICK CHAFFEE *v.* ORCUTT SHERMAN.

*Trespass.   Conditional Sale &c.*

The plaintiff let L. have a quantity of goods for the purpose of peddling, and the goods were to remain his until sold, and he had a right to retake the goods at any time, and L. had the right to return them when he pleased; when the goods were sold, L. was to account for them at prices specified in a list of the articles made out by the plaintiff, for L., and by agreement between the parties, L. deposited with the plaintiff a sum of money, equal in amount to the value of the goods, which sum was to remain, as collateral security, for the performance of the contract on the part of L., in the hands of the plaintiff. After L. had disposed of a portion of the goods so taken, he took more goods of the plaintiff on the same terms, and at the time paid $39, in money to the plaintiff, which sum was equal in amount, into the sum of $4,12, to the value of the

goods taken at this time, and took a list of the articles, as before, upon which $39
was credited as so much paid, and also retained the goods unsold, which he re-
ceived the first time.    These goods while in the possession of L., were attached
by a creditor of L. as the property of L.; and the plaintiff brought his action
of trespass to recover the value of, the goods so attached.    Upon the foregoing
state of facts, *it was held,* that the plaintiff could maintain the action of tres-
pass, but could only recover the balance unpaid on the second bill of goods, af-
ter deducting the $39 and interest.

TRESPASS for certain goods of the plaintiff.

The cause came to the county court by appeal from the judg-
ment of a justice of the peace.

Plea, the general issue, and trial by the court.

It appeared on trial, that the goods described in the declaration
were taken by the defendant from the possession of one Jacob H.
Lampson by virtue of a writ of attachment, in favor of one Ebenezer
Porter, against said Lampson, regularly issued and put into the hands
of the defendant, (who was constable of Poultney,) for service,
upon which judgment was rendered and execution duly issued,
and put into the defendant's hands, so as to charge the property.

It also appeared that said Lampson was, previous to the receipt
of the goods as hereinafter stated, poor and in debt, and that he
wanted to procure the goods in question, of the plaintiff, to ped-
dle on commission, and it was agreed between the plaintiff and
said Lampson, that the plaintiff should deliver to Lampson goods on
the following terms :—Lampson was to take the goods for the pur-
pose of peddling, but the goods were to remain the property of
the plaintiff until sold, and the plaintiff had a right to retake
them whenever he pleased, and the said Lampson, had a right to
return them, or any part thereof, at his pleasure, and the goods
sold by Lampson were to be accounted for to the plaintiff at the
prices specified in a certain list of the articles so taken, which list
was made and furnished to Lampson by direction of the plain-
tiff, and for the purpose only of enabling Lampson to know what
he had received, and the prices for which he was to account for
them.    It was, as it appeared, agreed between said Lampson and
the plaintiff, that Lampson should, and he accordingly did de-
posit with the plaintiff a sum of money, ($50) equal in amount
to the value of the goods taken, as specified in the list of articles
taken, the first time, which was to remain as collateral security
for the faithful performance of the contract on the part of Lamp-

son. That after having disposed of a portion of the goods received the first time, the said Lampson came to the store of the plaintiff and procured more goods of the plaintiff, upon the same terms, and then took a similar list of the articles and prices, and then paid the plaintiff the sum of thirty-nine dollars, ($39,) and took away the articles specified in the second list, and retained the articles unsold which he received the first time, which constituted all the goods taken by the said Lampson, he leaving the money deposited the first time in the hands of the plaintiff, as security, as aforesaid.

The two bills of articles delivered to Lampson were put into the case, by which it appeared that the $39 was equal into $4,12, to the value of the second bill of goods.

The plaintiff offered said Lampson as a witness, who testified to the terms on which he received the goods of the plaintiff.

The attachment, record of judgment, and execution, in the suit of *Porter* v. *Lampson* were put into the case.

Upon the foregoing facts, the court rendered judgment for the plaintiff to recover the value of the goods taken by the defendant.

Exceptions by defendant.

*J. B. Beaman* and *J. T. Harris* for defendant.

I. The right of *property* in the goods passed to Lampson by their delivery, whether the contract was a sale or *mutuum*. Story on Bailments § 439, 283. *Chase et al.* v. *Washburn*, Am. Law Reg. 487. 3 U. S. Digest 381.

II. The plaintiff had neither actual or constructive possession of the goods, and cannot sustain trespass. *Swift* v. *Solace*, 23 Vt. 279. Greenleaf's Ev. § 616. *Fairbanks* v. *Phelps*, 22 Pick. 535.

Lampson had a right to possession, to sell and make his profits, he had a lien for the prices paid. Story on Agency § 335, 350. Story on Bailments 121. 15 East 607.

*R. R. Thrall & W. H. Smith* for plaintiff.

Lampson was the bailee of the plaintiff, and was not the owner of the goods at the time they were attached.

The opinion of the court was delivered by

Chaffee *v.* Sherman.

REDFIELD, Ch. J. It seems that the plaintiff was *secured* by a deposit of money, to the full value of the first bill, and actually paid all of the second bill except $4,12, so that in fact he cannot have any ultimate equity, beyond the sum of $4,12. All that is recovered beyond that sum, must go to the credit, and for the benefit of Lampson. Beyond that, this suit is Lampson's suit. And if the property was so situated, that it was exempt from attachment, on his debts, the defendant is a mere wrong doer, and the suit might well have been in Lampson's own name, the same as he might recover for other property, exempt from the levy of an execution.

We have not as yet, perhaps, decided any case, going this length. The cases of conditional sales, where the property has been held exempt from attachment, have always shown a beneficial interest in the vendor, at the time of the recovery to the extent of the judgment. But here that contingency is not very obvious.

The plaintiff had received money enough to pay him for the goods ; he had the goods for sale, and had delivered them to Lampson for that purpose, on the condition of sale or return. This money was undoubtedly put to use by plaintiff. The contrary, certainly does not appear. It would be his duty to put it to use, or upon interest. On the most favorable construction, then, it created a trust in Chaffee, for the benefit of Lampson. So too, the goods must be regarded, as creating a trust, on the part of Lampson, for the benefit of Chaffee. But these are to be kept distinct, and subsisting, for some purpose ! It does not seem to me it can be for the security of plaintiff, beyond the $4,12. For he is already secure beyond all peradventure. What then is the purpose of these twin trusts? Certainly not exclusively to keep the property out of the reach of all legal process ! This is scarcely a legal purpose. But it does seem, on the principle of the decision below, to have that effect. This money cannot be reached by trustee process, because the plaintiff has a beneficial interest in it, for his own security.

And if the creditor had attempted that mode of process, there is no great probability, perhaps, that Lampson would ever have volunteered to pay for the goods, in any other mode, so as to leave the money to be held by the trustee process. And when the goods are attached, in the ordinary mode, the full value is to be recovered by Chaffee, so that neither the money or the goods, can

be reached on Lampson's debts. And it is equally clear, they cannot be reached on Chaffee's debts. This, then, has the effect to put the property out of the reach of creditors, and most effectually. And has it any other 'apparent effect or purpose? Is it not necessary then to refer it to that purpose? Does not the testimony all bear one way? If so, is it not a mere question of law? That is so treated in reference to other subjects. If all the testimony tends to show one state of facts, and none in any conflicting direction, the court may direct a verdict. And if this is the legitimate result of allowing the vendor, in a conditional sale, to hold a lien for the price, as held in *West* v. *Bolton*, 4 Vt., and other cases following that, I should, for one, incline not to follow them, in this case certainly. I would say as did the philosophers before Torricelli, "nature abhors a vacuum, but not above 32 feet; her abhorrence then ceases ;" she stops there.; so would I stop here! But I do not think the case bears any. analogy to the principles laid down and followed in those cases. There the vendor is allowed to recover, for his own benefit and security, but here virtually for the benefit of the vendee. For who else takes the benefit of this judgment? It is, in my judgment quite idle to attempt to delude ourselves, by the ingenious device these parties have got up for us, and to say, that the plaintiff takes the money recovered here, and Lampson, that which he had deposited as security. It is the recovery of this money, which releases that. The parties were mutually relieved from all obligation to each other, and their accounts balanced, by equal and mutual trusts, until this judgment is realized; and then, Chaffee becomes the debtor to Lampson ,for the prior amount of the judgment except the $4,12. . Is it not then true that Lampson derives benefit, and the sole benefit of this judgment beyond the $4,12? And will the law allow so shallow a subterfuge to distract its vision ? This to my apprehension is just such a fancy and subterfuge as may always be expected from fraudulent debtors, and such as it is the business of courts to penetrate and demolish. I should blush for any code of laws that would suffer itself to be hoodwinked, and deluded by such shallow devices; or that would not at once free itself from any entanglements, which the apparent pursuit of its own doctrines, might seem to throw around it, when it became apparent, that the results were so much at variance with acknowledged principles of justice and

equity. I should myself think the plaintiff could not recover beyond his own equitable interest in the goods, deducting the $50 and the $39, the latter sum being on the bill credited as so much *paid,* and it is so denominated, in the bill of exceptions, as so much *paid,* at the time the goods were taken, and we must regard this sum as paid towards the second bill of goods, and therefore, whatever portion of these goods were attached should undoubtedly be regarded as paid for. And the majority of the court concur in this latter view. But a majority of the court think the plaintiff may maintain the action for the balance. The plaintiff may, therefore have his judgment affirmed, deducting the $39 and interest, and reversed for the remainder, or have the judgment reversed, and remanded for new trial.