HAYWARD RUBBER COMPANY *v.* JOHN J. DUNCKLEE.

*Depositions.   Evidence.   Admissions.   Trespass.*

The plaintiffs in this suit were described in the writ as " a corporation duly established by an act of the legislature of the state of Connecticut, doing business at Hartford, in the state of Connecticut." The caption of a deposition, offered as evidence, described the plaintiffs, at whose request the deposition was taken, as " a corporation established in the state of Massachusetts." *Held*, that this discrepancy was no cause for rejecting the deposition.

Where A, a party in a suit, seeks to put in as evidence a letter written to him by another person than the opposite party, in reply to a letter written by A, it is not necessary that he should, before he can be allowed to introduce such evidence, also put in evidence the letter written by himself, or prove its contents, when the person to whom it was written is either dead or out of the state.

The admissions made by one, while in possession of property, against his title to it, are admissible as evidence against an officer who has subsequently attached and taken possession of the property, as that of the person making such admissions, in a suit brought against the officer to try the title to the property, by a third party, claiming adversely both to the officer and the person who has made such admissions.

But such admissions or declarations made *after* the attachment by the officer are not admissible.

When one's declarations are not proper testimony in chief, but are proper as tending to impeach his former declarations, which have been already

Hayward Rubber Company *v.* Duncklee.

admitted in evidence, the party offering such declarations must offer them as *impeaching* testimony, and if not offered specifically as such, it is not error to exclude them. To render the declarations of an agent admissible in evidence against his principal, they must be made in regard to a transaction then depending, and must be a part of the *res gesta*.

Though parol evidence is not admissible to vary a written contract, yet it is always proper to show by parol that a written contract has not been consummated, or that certain acts have not been performed under a written contract but under a different parol agreement.

The consignor of goods, consigned to be sold on commission, may, if the consignee has failed and become insolvent, and has no claim against the consignor for commissions, maintain trespass against an officer who has attached and taken the goods as the property of the consignee.

This was an action of trespass for some rubber shoes. Plea the general issue, and trial by jury, November Term, 1855, and verdict for the plaintiffs.

The claim was for eight cases of rubbers out of fourteen cases received of the plaintiffs by R. Batchelder and B. Towsley, in June, 1851, at the store of the latter, in Burlington, Vt., who then conducted a wholesale and retail business in boots and shoes, under the firm of Batchelder & Towsley.

The fourteen cases when received by B. & T., were placed by them with their other stock in the back room of their store, and all but the eight cases in question were sold from time to time in the ordinary course of their business, down to November 30, 1851, when they became insolvent, failed and stopped business. Said eight cases were, December 3, 1851, attached as the property of D. & T., on several writs against them, one in favor of one Webb, the others in favor of Wires and Peck, the latter being attorneys of Webb in his suit. Said writs were prosecuted to judgment in favor of the attaching creditors, and the property duly charged in execution under the judgments. The defendant was at the time of the attachment, constable of said Burlington, and made the attachment as such. The defendant claimed that said rubbers when received by B. & T. were bought by them of the plaintiffs. The plaintiffs claimed that they were merely consigned to them to B. & T. to sell for the former on commission.

The rubbers remained in the manner aforesaid in the posses-

sion of B. & T. in their said store, (except as they were sold) down to the attachment, and the cases in question were in their possession in said store when attached. The plaintiffs introduced the evidence of one Holton, whose evidence tended to show that in June, 1851, and previously, he was the traveling agent of the plaintiffs to affect sales and arrange for consignments of their rubbers, and so continued through that year; and being such agent in June, 1851, for his company agreed with B. & T. that the company would send them on consignment some cases of rubbers to be sold by B. & T., for the plaintiffs upon the following terms, viz: that they, B. & T., should receive seven or seven and a half per cent. discount from the company's prices, a list of which prices were shown them, on the sales if amounting to five hundred dollars, but no commission if the sales did not equal that amount; upon the sales, if amounting to more than five hundred dollars, and not exceeding one thousand dollars, a commission of ten per cent. on said prices; on the sales exceeding one thousand dollars, fifteen per cent. on said prices; Batchelder & Towsley, to guarantee or be responsible to the plaintiffs for all sales they, B. & T. should make.

No definite quantity was agreed on that the plaintiffs were to send to B. & T., but they told the agent to send at first a case of each kind, and the agent's testimony tended to show that he expected the plaintiffs would send as many as B. & T. would want or be able to sell, and that this arrangement was made at Burlington, and left subject to the approval of the plaintiffs, as he was not authorized to make such contract; and if so approved, the plaintiffs were to send on the goods from Boston on his return to Boston, where the plaintiffs were doing business and kept their stock. On cross-examination the witness said, all cases broken or sold by B. & T. they were to pay for, those not broken or sold by them to be returned on settlement, as they were not to pay for them. That upon submitting the above arrangement to the president of the company he approved of it, and in pursuance of the same, he, Holton, put up and forwarded to B. & T., the fourteen cases in June 1851, amounting to about five hundred and fifty dollars at the company's prices, a list of which was furnished B. & T. when the arrangement was made.

That by the same arrangement, B. & T. were to take all risks

of sale whether at cash or on credit; and each case if broken by them, was, as to the company to be treated as sold, that is, B. & T. were to account for it the same as if B. & T. had sold it, and were to be accounted for by them to the plaintiffs, those unsold to be returned unbroken. That in December following, the president having heard of the failure of B. & T., he, Holton, was sent to Burlington as agent of the plaintiffs to take care of and sell such of the rubbers as remained undisposed of, to reclaim them, and with power to institute a suit for them on behalf of the company.

That he accordingly came to Burlington, and demanded them of the defendant. That upon the interview with the defendant, he told him that the rubbers were never sold to B. & T., and that they were the property of the plaintiffs, and sent to B. & T. on the terms above stated. The defendant both then and in a second interview that day, refused to deliver, and this suit was then brought by Holton's direction. The aforesaid arrangement with B. & T. was stated by the witness in chief. On cross-examination he also stated that, when the goods were forwarded to B. & T., they were accompanied with a bill of sale not signed. That during the same season the plaintiffs had consigned to different parties to sell for the plaintiffs, forty thousand dollars worth of rubbers, sent with them similar unconditional bills of sale in all instances, and that such was the plaintiffs' custom of doing business. The bill was then produced and read. His evidence also tended to show that B. & T. had not paid the plaintiffs for any of the rubbers, nor made any settlement with the plaintiffs about them. That when the property was forwarded to B. & T., it was charged upon the order-book of the plaintiffs, and by the order-book, the book-keeper of the plaintiffs would, according to their course of business, govern himself in determining what the account or arrangement was between the plaintiffs and B. & T. The order-book would be a report to him on that subject.

The plaintiffs offered in evidence the deposition of D. B. Towsley; its admission was objected to upon the ground that it was certified to be taken for a company established in the state of Massachusetts, the plaintiffs being described in the writ as a corporation duly established by an act of the legislature of the state of Connecticut, doing business at Hartford in the state of

Connecticut. Objection overruled, and the decision on this point was excepted to. This deposition referred to a letter written by B. & T. to one Polhemous, the book-keeper of the plaintiffs, in reply to a letter from him accompanying the goods and inclosing a note for the price thereof, which he requested them to sign and return to him. The letter to Polhemous was annexed to the deposition and was offered in evidence by the plaintiffs. The defendant objected to the admission of the letter, upon the ground that the plaintiffs were bound to produce the original letter from Polhemous, referred to by the deponent in his letter of September 20th, 1851, or on the proof of its loss to prove its contents, in order to introduce the subsequent letter referred to by the deponent.

This objection was overruled and the letter was read in evidence. To the admission of this letter the defendant excepted.

It was admitted that Batchelder died July, 1854; Holton also testified that after the goods were forwarded the plaintiffs' book-keeper in September, by mistake, under a general order from the plaintiffs, forwarded to B. & T. a note to be by them executed in payment of the goods. He was also asked by the plaintiffs' counsel if he ever sold the goods to B. & T. The defendant objected to the inquiry; objection overruled and question put. Witness answered that he did not. This decision the defendant excepted to.

The defendant offered to show declarations by Batchelder, made since the goods were attached by the defendant, to the effect that he made on the part of his firm the arrangement with the plaintiffs through Holton for the rubbers, and by the arrangement purchased them absolutely. Objected to and excluded; and to the decision excluding them, the defendant excepted.

The defendant then introduced evidence tending to show that on the same day that Holton demanded the property of the defendant as aforesaid, the latter applied to Wires, the attaching creditor and as attorney for Webb, to determine whether to retain the attachment or to return the property, and evidence tending to show that Holton, on that day, made statements different from his testimony in court, as to the terms on which the goods were sent to B. & T. The testimony on this subject of Duncklee's applying to Wires and Holton's statements, was that of Levi A. Edgell and Salmon Wires. It appeared that soon after the defendant attached the

4

goods, and before Holton was at Burlington to obtain the goods, the defendant carried them from the store formerly occupied by Batchelder & Towsley (where they were attached), across the street to the store of said Edgell, where they were on the day that Holton demanded them of the defendant, and that Holton on that day looked at the goods at Edgell's store.

Edgell testified, that after the attachment, and on the occasion of Holton being at Burlington, Holton came into his (Edgell's) store, and inquired for Duncklee, and Duncklee was not in; that Holton went out and in half an hour or so Holton came in again, and in the mean time Duncklee had been in, and left before Holton came back; that Holton then tried to sell the rubbers to him, and said that he had no doubt but that they would give them up to him. Edgell's testimony tended to show, that Holton then, both before and after Wires came in, made statements relative to the terms on which the goods were sent to Batchelder & Towsley by the plaintiffs, to the effect that when the goods were sent they were sent under an absolute sale by the plaintiffs to B. & T., and remained so till the plaintiffs sent up a note to be signed for them, and then immediately after that, the parties agreed that B. & T. should have them to sell on commission, and that during this conversation Wires came in and heard the residue of the conversation.

Wires testified, that he came into Edgell's store, and that Edgell and this man Holton were there, and that Holton, after he (Wires) came in, made statements to the effect that the goods were, when sent, sold by the plaintiffs to B. & T. absolutely, and that immediately after the plaintiffs sent up the note (a six months note) for the goods, the parties agreed B. & T. might have them to sell on commission, and that he (Wires) put some questions to him on the subject (both Edgell and Wires detailing the particulars of Holton's statement on that subject); Wires further testified, that in consequence of what Holton stated, he that day gave a bond to the defendant to indemnify him for attaching the goods, and told the defendant not to give them up.

Holton, on this subject, testified in substance, that he did not know Mr. Wires, and had no recollection of having any conversation with him; that he was not acquainted with Edgell, but that he had some conversation on the subject with the man that owned

Hayward Rubber Company v. Duncklee.

or had charge of the store, and he presumed it was Edgell, but denied that he made the statements testified to by Edgell and Wires, and denied that he made any statements different from his testimony on the stand in this cause, except that he did try to sell the goods to Egdell, and told him he presumed they would be given up. Holton testified, that no commission was to be paid to B. & T. by the contract, except by way of abatement on the prices.

The defendant then requested the court to instruct the jury, that if Holton was sent to reclaim and dispose of the goods, as this evidence tended to show, and made the representation as to the plaintiffs' title at the interview with Wires, such as the defendant's evidence tended to show, and Wires and the defendant acted on that representation, as that evidence tended to show, the plaintiffs could not recover, though the title might have then been in the plaintiffs as against the defendant; and that, if they should be instructed that the plaintiffs would be entitled to recover provided the property had never passed out of the plaintiffs, that they could recover for nominal damages only; and that said representation of Holton to Wires and Edgell as to the plaintiffs' title, was to be treated by the jury as evidence in chief, and tending to show a sale by the plaintiffs to Batchelder & Towsley, and as such to be weighed by them in determining whether the property had been bought or not by B. & T.

The court declined so to charge, and decided that if Holton made such declarations as Edgell and Wires tended to show, as to the contract under which B. & T. received the goods, it was only evidence tending to impeach Holton, and charged the jury accordingly.

The defendant also requested the court to charge the jury, that the plaintiffs could not show that the delivery to B. & T. was not by virtue of an absolute sale — the bill importing an absolute sale — and that any evidence to the contrary was to be laid out of the case; and should the court decline so to charge, that the bill was *prima facie* evidence of a sale to B. & T., and turned the burden of proof on this point upon the plaintiffs. The court on this point charged the jury, that the bill of sale imported an absolute sale from the plaintiffs to Batchelder & Towsley, and

that it tended to prove such absolute sale, but that it was open to explanation by other evidence, and not conclusive.

As to the remaining requests of the defendant, the court declined to charge as requested, except as follows. And among other things told the jury that it was a question of fact for them to find whether the goods were forwarded to the plaintiffs under the agreement testified to by Holton, or whether they were sold by the plaintiffs to B. & T.; that if they were sent under the agreement testified to by Holton, and remained so under that agreement down to the time they were attached by the defendant, they were not attachable as the property of Batchelder & Towsley, so far as the unbroken boxes were concerned; but that if they were ever sold by the plaintiffs to Batchelder & Towsley, or any agreement was made by them with the plaintiffs by which the property became B. & T.'s, whether before or at the time, or subsequent to the time they were forwarded to Batchelder & Towsley, the defendants were entitled to recover, whatever agreement might have been made after the goods were sent to Batchelder & Towsley.

That, in order to make a sale, there must be an agreement or understanding of both parties to that effect; if one party understood it one way, that is, that it was a sale, and the other party the other way, that it was not a sale, it would not be sufficient to make it a sale; but that a sale need not be proved by express testimony, it might be inferred from circumstances; that the jury might look at the nature of the acts and conduct of the parties down to the time of the attachment, in connection with Holton's testimony, and see how the parties understood it and treated it; if either party understood it or treated it as a sale, it tended to show it was a sale; but that the jury were to find the fact whether there was a sale, or whether the goods were in Batchelder & Towsley's possession under the contract testified to by Holton; that the bill of sale sent with the goods was absolute, and unexplained tended to show an absolute sale; so the sending on the note to be executed tended to show an absolute sale; that sending such bill of sale tended to show that the plaintiffs so understood it as a sale; but that if sent by mistake, or if it was the plaintiffs' usual custom at that time to send such bills with goods sent to be sold on commission, as well as with goods that were sold, the sending of such bill in this case

would not be much evidence that it was a sale, or that the plaintiffs so understood it.

The court told the jury in relation to the deposition of D. B. Towsley, introduced by the plaintiffs, and who testified in regard to *declarations* of B. & T., that they did not own the goods in question, but that they belonged to the plaintiffs ; that what he, the deponent testifies, Batchelder & Towsley told him, as to the contract or agreement under which they had the rubbers, was not evidence in the case, unless the jury were satisfied from the deposition, taking it all together, that it was said while Batchelder & Towsley had the rubbers in their possession and before the attachment ; and that if they were not so satisfied, then to lay that part of the deposition out of the case and not treat it as evidence.

As to the question whether trespass was the proper remedy, the court charged the jury that if it appeared that, at the time of the attachment, the plaintiffs were indebted to B. & T. for commission, B. & T. would have a lien on the rubbers, so that the plaintiffs would not have such a right to possession of the rubbers as to enable them to maintain trespass. But that if they, B. & T., had the rubbers under the contract testified to by Holton, and B. & T. had not any claim for the commission, only by way of abatement on the prices stipulated in the contract, and they had not paid the plaintiffs anything for the rubbers the plaintiffs sent to them, the plaintiffs had such a right to the possession of the property in question, that trespass was the proper remedy, as it was conceded in the case that B. & T. failed and became insolvent on the 30th of November, a few days before the attachment by the defendant.

The defendant excepted to the refusal of the court to charge as requested, and to the charge as given.

*Peck & Harvey*, for the defendant.

*Roberts & Chittenden*, for the plaintiffs.

The opinion of the court was delivered by

BENNETT, J. We think the objection to the depositions of the Towsleys was not well taken. It is necessary that the certificate

of the magistrate who takes the deposition, should show truly in what cause it is to be used. Without an identity in this respect, it would be impracticable to sustain an indictment against the deponent for perjury. The plaintiffs on the record are set up to be " a corporation duly established by an act of the legislature of the state of Connecticut, doing business at Hartford," &c. Though it might not have been necessary to set up in the declaration by what authority the plaintiffs became a corporation, yet so far as this goes to give indentity to the plaintiffs, I should apprehend it could not be rejected as surplusage under the rules in pleading which empower a court to reject matter purely surplusage.

In the caption to the deposition the plaintiffs are described to be " a corporation established in Massachusetts." If this is to be taken as equivalent to describing them as a corporation created by the legislature of Massachusetts, it would seem difficult to make out that one and the same corporation is described in the record and in the deposition. But we think the more obvious construction to the certificate is simply, that Massachusetts was the place where the corporation was doing business. The expression is simply, " established *in* the state of Massachusetts." Had the expression been, " established and doing business in the state of Massachusetts," no one could have hesitated as to the sense in which the word " established " was used, and to what it referred ; and we think, as it is used, the meaning is to be taken to be the same. There is no allusion in the certificate to the power creating the corporation. The expression is, " established in the state of Massachusetts." It is far more reasonable to consider the words " *in business*" as being dropped or omitted after the word established, than to change the words from a passive sense, in which they seem to be used, to an active sense, and one implying action on the part of the government. If that had been the sense in which the word " established" was intended to be used, it would have been followed no doubt, with the preposition *by*, denoting the *agent* by which the corporation was established, instead of *in*, which, in the connection in which it is used, seems' to be passive and to imply simply a state of being. The fact that in the writ the corporation is described as doing business in Hartford, Conn., and in the certifi-

cate to the deposition, as established, that is, in business in the state of Massachusetts, can not, *prima facie*, destroy their identity. We may will take judicial notice, that a corporation may have more than one place of business.

It is claimed by the defendant that the plaintiffs were bound to put in the letter of Polhemous, or upon proof of its loss, to prove its contents before they could put in Batchelder & Towsley's reply to it, of the 20th of September, 1851. It is true that in the case of *Watson* v. *Moore*, 1 C. & Kir. 626, it was held that where one party produces the letter of the opposite party, purporting to be in reply to a previous letter from himself, he is bound to call for and put in the letter to which it was an answer, as a part of his own evidence. But should that case govern this ? We think not. Batchelder & Towsley are not parties to this suit, and the plaintiffs have no means of compelling them to produce the letter of Polhemous. Batchelder is dead, and Towsley, who took the partnership papers, is out of the state, and it cannot be required of the plaintiffs that they should prove its contents. The defendant, if that letter is important to him as explaining or qualifying the letter of Batchelder & Towsley in answer to it, has the same means to procure the production of it, as the plaintiffs have.

The admissions of B. & T. were against their title to the goods, and of course it is to be taken against their interest. We apprehend that by a decided weight of authority, these admissions were admissible against this defendant upon the ground of *privity*, which denotes *successive relationship* to the same rights of property. The defendant has, by operation of law, succeeded *sub modo* to the rights of B. & T., and upon this question he stands upon the same ground as he would if he had been their vendee.

Notwithstanding the case of *Hines et al.* v. *Soule*, 14 Vt. 99, we are disposed to affirm the decision of the county court in this particular. That case has heretofore been considerably impugned, though perhaps not directly overruled. Admissions made by the assignor of a chattel or personal contract prior to the assignment, and when the assignee must recover through the title of the assignor, and succeeds only to that title as it stood at the time of the transfer, bind the assignee. So the declarations of an indorser of negotiable paper, indorsed after it is past due, made while he

was the holder of the paper and in disparagement of his right, are evidence against the indorsee. See 1 Greenl. Ev. and cases there cited ; sec. 189, 190.

The question was considered somewhat at length upon principle and authority, in the case in 14 Vt. It is of no consequence on this question, whether the declarant is living or not, or whether he is called as a witness or not.

The declarations are not to be treated as *secondary* evidence or *as res inter alios acta,* but *inter eosdem acta,* and as primary evidence.

The declarations made by Batchelder after the attachment, and offered by the defendant, were properly excluded. *After* declarations could not be given in evidence against the defendant, much less in his favor. It is now claimed for the first time, that they were competent to impeach his former declarations. It does not appear from the exceptions that they were offered with any such view, and we are to take it that they were offered and excluded as testimony in chief. If the party claimed them as impeaching testimony, he should have offered them with that view.

We think the court were right in regard to the effect which they gave to the testimony of Wires and Edgell, and that it could only go to impeach Holton as a witness on the stand. It is claimed that Wires acted upon the faith of the declarations of Holton, as testified to by him and Edgell, in not surrendering up the property ; and, therefore, whether true or false, the plaintiffs should be bound by them if the jury found he made them. The statements of Holton went to a transaction which was then entirely past, and were in no way connected with any act which Holton was then performing for the plaintiffs, if in fact, the declarations were made as is claimed by the defendant. To render the declarations of an agent admissible against his principal, they must be made in regard to a transaction then depending, and must be a part of the *res gesta.* In the case now before us, the most that can be claimed is an attempt upon the part of Holton to give an account of a *past* transaction.

We think there was no objection to the admission of the evidence relative to the bill of sale, as it is called, or the charge of the court. The case shows that evidence was given to prove a con-

tract made between these parties by parol, some short time before the goods were sent, that they should be sent to B. & T. to sell on commission, and that they were sent in pursuance of that agreement; but this is denied by the defendant's counsel, and the ground is assumed by him that there was a sale of them, and the invoice of the goods, or what the defendant calls a bill of sale, which was sent by the plaintiffs to B. & T. with the goods, is relied upon by him as evidence of the sale; and the ground is assumed that the bill of sale can not be explained or controlled by parol testimony. But suppose we assume, as the county court assumed on the trial of the cause, that the bill of sale does, upon its face, import a contract of sale, still we apprehend there can be no difficulty in the case. The point controverted was, whether the goods were in fact delivered under the contract which had been made for a consignment to sell on commission, or under the bill of sale; and whether, if the goods were delivered by the plaintiffs under this bill of sale, they were received and held by B. & T. in such a way as to bind them by the bill of sale, though at the time they received them they understood it was upon a contract to sell upon a commission. The question then really was, whether this bill of sale ever took effect and became the contract of the parties. The question whether a written contract has ever been consummated, may always rest in parol. This bill of sale could not be binding upon B. & T., and of course could not be a contract until adopted by them. The jury have found, under the charge of the court, and as we think a correct one, that B. & T. were never bound by the bill of sale.

In regard to the plaintiffs' right to maintain trespass, we think the charge was right. The jury under this part of the case must have found that B. & T. had the goods to sell on commission, and that the plaintiffs were not indebted to B. & T. for commissions, and that they could only have a claim for commission by way of abatement on the prices of what were sold, and that B. & T. had not paid the plaintiffs for any of the goods sent them; and also that B. & T. *failed* and *became insolvent* a short time before the attachment by the defendant.

The plaintiffs had the general ownership of the goods, and B. & T. had no lien upon them for commissions; and, though they had the possession of them under the bailment with a power of

sale, yet, upon the failure and insolvency of B. & T., there was a a right in the plaintiffs to an immediate and an actual possession, and this general right would give a constructive possession. See *Chaffee* v. *Sherman*, 26 Vt. 237.

The case of *Skiff* v. *Solace*, 23 Vt. 279, is not analogous to this case. There the plaintiff was not the general owner of the chattels, and of course could not, by means of a special property, have a constructive possession.

Judgment affirmed.