ISAAC OWEN AND WIFE *v.* FOSTER.

Where courses and distances, alone, are given in a survey, the needle must
    govern the one, and the chain the other; and the intention of those mak-
    ing the survey is not to be let in to vary the result.

One tenant in common may acquire a title against his co-tenant, by fifteen
    years adverse possession, but this presupposes an *ouster.*

If an heir to an estate goes into possession, in severalty, of a portion of
    the estate, under a division made by a committee, specifically setting
    out such portion, he cannot extend a constructive possession beyond the
    limits of the division.

Trespass cannot be maintained by an heir to an estate, against a co-heir,
    for an injury to the undivided lands.

TRESPASS, for cutting timber on plaintiff's close, in Benson.

Plea, not guilty.

Upon the trial below, it became material for the plaintiffs
to show title to the land in dispute, being part of the Blair
lot, so called, situate south of and adjoining the east and
west road, leading from Benson to Hubbardton, bounded
north on said road, and south on the south line of the Blair
lot, of which it is a part. It apeared that, in November, 1819,
Abigail Owen, wife of the plaintiff, and Anna Foster, wife
of the defendant, owned said piece of land, and other lands
adjoining, jointly, the same having been set off to them by a
committee appointed by the probate court, in 1813, and that,
in said month of November, the parties agreed upon Daniel
Root and Joseph Bascom, to make partition of all the lands
which they so jointly held and owned between them; that
said Root and Bascom then proceeded to make such division,
and to set off to said Abigail the land situate on the south side
of said road, which said Abigail and Anna had owned joint-
ly, intending to set off all on the south side of the road, and
made out a survey thereof, in writing; (which was made a
part of this case,) but it appeared that the said Root and
Bascom began at the north-west corner of said south piece,
and ran south 10 deg. west, and measured only about eighty
rods from the north line south, but found no line, and, from
thence, they measured across and called the land thirty rods in
width, and put the same down in their survey as being one

hundred and sixty rods north and south, supposing that one hundred and sixty rods extended to the south line of the lot, and supposing that the line of the lot ran upon the degrees before mentioned. It further appeared that the line of the lot, owned by the said Abigail Owen and Anna Foster, ran on a line south 21 deg. west, which would leave, as ran by the said Root and Bascom, a gore of land west of the land owned by the said Abigail and Anna, and that this had never been claimed nor occupied by the said Isaac Owen and wife. It appeared that there were seven or eight acres of land cleared on the north end of the lot; but that the south end, which is south of the one hundred and sixty rods, was not cleared, but was valuable for timber, and that the south line of the Blair lot was a well known line. It further appeared that the plaintiffs went into possession of the piece of land south of the road, occupying the land which was cleared, but not cutting timber nor doing any act of ownership south of the one hundred and sixty rods, but claiming to the south line of the Blair lot, and have continued their possession to this time ; and it further appeared that the said Foster and wife also had, from a very short time after the division was made, claimed and contended that the land south of the one hundred and sixty rods, was undivided, and jointly owned by them and the said Owen and wife, but that no actual possession had been taken of the same nor any act of ownership done thereon, by either of them, except as before stated, until the defendant cut the timber complained of.

It also appeared that neither Anna Foster nor her husband were present at the time when the division was made, and that, at that time, the committee, who made the division, intended to divide, and supposed they had divided the whole land, and that it was mutually expected that quit-claim deeds should be given according to the division; but that, very soon after the division was made, Foster discovered that all the land had not been divided, and refused to execute a quit-claim deed, or to abide by said division, and, in fact, had always continued to claim that the land south of the one hundred and sixty rods, was undivided.

It appeared that, from the north line of the land so set off, to the south line of the Blair lot, is 176 rods, and that the

trespass, if any was committed, was south of 160 rods from the north line of the lot, and north of the south line of the lot.

The plaintiffs claimed that they had acquired a good title to the whole of said piece of land, thirty rods in width, and from the north to the south line of said Blair lot; but the court decided, and so charged the jury, that the plaintiffs, having entered into the exclusive possession under the survey and division aforesaid, their occupancy of the 160 rods south, from the north line aforesaid, would not operate to acquire for them a title to any lands further south than the 160 rods aforesaid, unless they had exercised some act of ownership south of the 160 rods, and that the lands south of the 160 rods and north of the south line of the Blair lot, must be treated as undivided between the said Abigail and Anna. Whereupon the plaintiffs excepted to this opinion of the court, and submitted to a nonsuit, subject to the opinion of the supreme court, &c.

The survey of the land set to the wife of the plaintiff, was made a part of the case. The particulars of that survey sufficiently appear from the opinion of the court.

*C. Linsley* and *J. Kellogg,* for plaintiffs.

1. The division of the joint lands having been made by persons mutually agreed upon, that division ought to be established, according to the intent of the parties.

2. If the defendant did not purpose to yield to the division, as intended by those who made it, he should have declined acting on it altogether, and continued a common occupancy, or called for a new division. He should not be permitted to occupy the part designed for him, and correctly described, until the statute had run upon it and his right become perfect, and then turn round and claim another portion because a mistake was made in the description in setting out the land. He did no act to show that he insisted on his claim until the statute had run on that portion set to him. He acquiesced in the division, in deed, if not in words. *Stevens* v. *Griffith,* 3 Vt. R. 448.

3. The possession might, with propriety, be extended to the whole, for, as the plaintiff entered into possession of a part of a lot, located and bounded by definite bounds, claim-

ing the whole, his possession extends to the whole lot. *Hapgood* v. *Burt*, 4 Vt. R. 159. *Beach* v. *Sutton*, 5 Id. 213.

Owen & wife
v.
Foster.

*Briggs & June*, for defendant.

No constructive possession can be claimed by the plaintiffs.

1. The parties intended to have a division made of their estate; but, in consequence of a mistake, no division was in fact made. It was the intention of the parties to have the estate divided by the persons agreed upon, and to complete the division by making and executing proper deeds; but defendant refused to execute any deed, in consequence of the mistake in not dividing the whole estate.

2. One tenant in common or coparcener cannot acquire a title in opposition to his co-tenant, unless the possession is adverse and exclusive, with an actual ouster, and in this case unless a division was in fact made. 4 Kent's Com. 366.

3. The occupancy of that part of the lot, included in the survey by the plaintiff, being 160 rods, cannot, by construction, extend to the south line of the Blair lot, as the constructive possession cannot extend further than the title under which the party claims. *Brooks* v. *Tyler*, 2 Vt. R. 350.

4. There may be a division in *fact* made between tenants in common, which might be good between the parties; but, in this case, the defendant refused his assent to the division attempted to be made, and always claimed title, in his wife, to the land in dispute. The decision of the court was correct, and the nonsuit ought not to be set aside.

The opinion of the court was delivered by

BENNETT, J.—The case finds that it was the intention of the committee, who had been agreed upon to make the partition between the daughters of Amos Root, to set out to the wife of the plaintiff all the lands on the south side of the road, being a part of what is called the Blair lot. From the north line of the lot to the south line was 176 rods; but the committee, by their survey, run but 160 rods, and give no boundaries, neither do they run to any given line. They supposed, no doubt, that 160 rods would carry them to the south line of the lot. Though the case finds that the plaintiffs, after the severance by the committee, in 1819, went into the exclusive possession of what was set off on the south

side of the road, yet it negates any *actual* possession south of the 160 rods. There is no reason in supposing that the lands, where the trespass complained of is shown to have been committed, were, in point of fact, included in the survey of the committee, in the part set to Abigail Owen.

When courses and distances, as in this case, are *alone* gigiven in a survey, the needle must govern the one, and the chain the other; and the intention of those who make the survey cannot be let in to vary the result.

That part of the lot south of the 160 rods, then, not having been included, in point of fact, in the division, the only question of which the case is susceptible, is, have the plaintiffs acquired for the wife an exclusive title in severalty to the lands south of the survey of the committee, by means of fifteen years *adverse* possession? It is true, that one tenant in common may acquire a title against his co-tenant, by possession. But this supposes there has been an *ouster*. Otherwise, the possession of one is, in judgment of law, the possession of both. The plaintiffs, it is found in the case, had no actual possession of the lands south of what the survey covers, and they cannot have a constructive possession. Though the division, as made by the committee, in pursuance of their survey, has no binding effect, in and of itself, yet, if we treat it as a practical division, and admit, as the case seems to find, that the plaintiffs went into possession in severalty under this division, they cannot, by construction, extend their possession beyond it. So far as a constructive possession is concerned, it must be marked and limited with the survey in the division; and whether this division had been made a matter of record or not, would be of no consequence as between the immediate parties to it.

The result must be, then, that the wives of the plaintiff and defendant are still possessed of the lands south of the survey of the committee, as undivided land, and this action cannot be maintained.

The judgment of the county court is affirmed.