EZRA F. KIMBALL *v.* CYRUS LOCKE.

*Evidence.*

The plaintiff made a contract with C. to carry on the former's farm at the halves, and the plaintiff advanced money for the purchase of stock to be used on the farm.   The question at issue was whether the stock so purchased was bought and owned by the plaintiff and C. in common, or by the plaintiff alone; the testimony of the plaintiff tending to prove the latter to be true, and that of the defendant tending to prove the former to be the fact, and also that C. was to repay the plaintiff for half of the money so advanced for the purchase, whenever he was able; *Held,* that in this state of the testimony, it was competent for the plaintiff to introduce evidence to show that, at the time of the alleged joint purchase of the stock, C. was poor, and of no pecuniary responsibility.

REPLEVIN for a pair of steers.   The case was tried by referees, from whose report it appeared that the defendant claimed title to the steers by purchase from one Callender, and the main question in the case related to Callender's title to them.   The plaintiff owned a farm, and in the fall of 1854, Callender agreed

with the plaintiff to carry it on for one year from April 1st, 1855, at the halves, and during that fall and winter the steers in question, with other stock, were bought to be put on to the farm. The testimony of the defendant tended to show that Callender and the plaintiff bought the stock, including the steers, together, that the plaintiff advanced the money for their purchase, and that Callender was to repay him for half of them whenever he was able, and that they were owned in common. The plaintiff's testimony tended to prove that all the stock was bought and owned by him alone. At this stage of the case the plaintiff offered to prove that Callender, at the time of the alleged joint purchase of the stock, was poor, and of no pecuniary responsibility. To this testimony the defendant objected, but it was admitted by the referees, and to its admission the defendant excepted.

The referees found that the plaintiff was entitled to recover one cent damages for the unlawful taking and detention of the steers, and his costs; and the county court, at the April Term, 1858,—REDFIELD, Ch. J., presiding,—rendered judgment accordingly, to which the defendant also excepted.

*Stoughton & Grant,* for the defendant.

—— ———, for the plaintiff.

BARRETT, J. The only point discussed by the counsel for the defendant is, as to the admissibility of the evidence that, at the time of the contract between Callender and the plaintiff about the ownership of the stock, Callender was poor, and of no pecuniary responsibility.

The point in issue was whether, on the one hand, the plaintiff and Callender owned the stock in common which was bought to put on to the farm, owned by the plaintiff, that Callender was to carry on at the halves (the plaintiff having advanced the money for the purchase of the stock, of which Callender was to repay him one half whenever he was able), or, on the other, the stock was bought and owned by the plaintiff solely. The testimony of the defendant tended to show the former to be true. The plaintiff gave evidence tending to show the latter to be true. In addition

to the evidence thus given by the plaintiff, he offered the evidence in question.

If it had any legitimate tendency, in connection with the other facts and evidence in the case, to show the fact in dispute to be as claimed by the plaintiff, then it was properly admitted, If otherwise, then it should not have been admitted.

The principles which give pertinency and force to the common doctrine of circumstantial evidence, would seem to favor the admissibility of this evidence in this case; 1 Starkie's Ev. part III sec. 67.

Upon known principles of human conduct in the current business of life, it is quite clear that, other things being equal, a person, having purchased property with his own money, would be less likely to entrust another, if poor and irresponsible, with a pecuniary disposable interest in it, than if rich and responsible.

When all the purposes of a given arrangement would as well be served by retaining the entire right of property in himself, as by sharing the ownership with his poor and irresponsible neighbor, one can hardly exclude from his mind the conviction of the likelihood that he would pursue the former instead of the latter course. In this case no reason or motive is disclosed which would operate to countervail this conviction.

Not only do the text books propound and develope the doctrine in its principles and reasons, but the cases are numerous showing its practical application.

The subject came under the consideration of this court some two or three years ago in a case in Windsor county, and an application was made of the doctrine which fully covers the present case.

In that case the question in issue arose upon the replication of a new promise to a plea of the statute of limitations, in an action upon a promissory note. The plaintiff, as administrator of the payee, gave direct evidence to prove the new promise. The defendant, as a witness, denied it, and offered, in addition to his denial, evidence to show that the payee was uncle of his wife, that the note was given for property bought to speculate upon, and the speculation had been unfortunate; that in a little while after the note was given the defendant offered to pay it, but the

payee declined to take the pay then, because the speculation had not been successful, and told his neice, the defendant's wife, that he thought of making her a present of the note, but never did; that several years passed away and nothing more was said or done till after the decease of the payee. This evidence was objected to as having no bearing upon the subject of a new promise; but the county court admitted it, as predicating an inference as to the likelihood of the defendant's making a promise to pay the note after the statute had run upon it. The supreme court, on exceptions and full argument, sustained the decision of the county court.

In doing so, they but followed a former decision of the same court, made several years before in another case in Windsor county, in which the question was, whether a sheriff had a discretionary authority from the plaintiff in the management and collection of a large parcel of executions against his debtors, or received them, in the ordinary course, to serve and return in the strict performance of his official duty. In addition to other evidence introduced by the defendant sheriff, it was held proper for him to give evidence tending to show that many of the executions thus received were against poor men, of whom nothing could be collected without time and management, as being the ground of an inference as to the likelihood of such a discretionary authority being conferred.

In a case in Rutland county a few years ago, the court made a similar application of the same doctrine.

The comprehensive view in which this topic of the law of evidence is administered seems to be, that on the question whether a person did a particular thing or not, the character of the subject matter, and the circumstances affecting the relation of the parties to that subject matter, affect the probability of the thing in question having been done as claimed.

It is objected, still, that even under this view the evidence was improperly admitted, for the reason that the offer of it was not accompanied with evidence to show that the plaintiff had knowledge that Callender was poor.

Of course, in order for this evidence to have any bearing on the point in controversy; in other words, in order to enable the

triers to make any inference from it, it would be necessary for them to be satisfied that the plaintiff was cognizant of Callender's irresponsibility.

Inasmuch as the evidence would be pertinent in connection with such cognizance, as mere matter of the order of introducing the evidence, it would not be ground of error to admit this evidence, subject to the effect upon it, which the proof or failure of proof of such cognizance would legitimately produce. If not proved, then the evidence would go for nothing. But we think the very evidence, stated to have been given by the defendant, tended to show the pecuniary inability of the defendant, and the plaintiff's knowledge of that condition, viz: that the plaintiff advanced the money for the stock, and Callender was to repay him one-half of the purchase money *whenever he was able*; a most pregnant indication of present destitution of property, with portents of hope of improvement in that respect, and all within the mutual knowledge of the plaintiff and Callender.

It is to be remarked that a judgment based upon a report of a referee will not be held erroneous, unless error explicitly appears to have been committed. That does not appear in this case, nor indeed can it be fairly inferred, if it were a proper matter for intendment in that direction.

The judgment is therefore affirmed.