JOHN E. WATERMAN *v.* ABBIE E. MOODY AND HENRY H. ROGERS.

May Term, 1917.

·Present:   WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed February 12, 1918.

*Chancery Pleading—Answer—Demurrer—Sufficiency of Bill—*
*Amended Bill—Cross Bill—Departure—Findings of Fact—*
*Exceptions—Trial—Objection not Made Below— Harmless*
*Error—Presumptions—Possession of Real Estate—Right of*
*Way—Adverse Possession—Interruption—Evidence—Dec-*
*larations Against Interest—Admissions—Parol Evidence—*
*Admissibility of Grand List Books—Entry Upon Real Estate*
*—Presumed to be Under Deed—Tenancy in Common—Ous-*
*ter of Co-tenant—Claim of Right to Entire Premises—Con-*
*veyance of Entire Premises—Payment of Taxes—Remote-*
*ness of Evidence—Discretion of Court—Burden of Proof—*
*Adverse Character of Right of Way—Findings by Chancel-*
*lor—Transcript—When Findings Supported by Evidence—*
*When not Prejudicial—Presumptive Grant—When Sup-*
*ported by Evidence—Exceptions to Findings of Fact—*
*Record—Construction—Intendments Against Exceptor—*
*Motion for Reargument—When not Granted.*

With the exception that a defendant in a suit in chancery may, under
Chancery Rule 15, insert in his answer any special matter that
goes to the merits of the bill with the same benefit as if he had
formally demurred to the bill, there must be no overlapping of de-
fences, and, if a defendant answers a part of the bill and then
demurs to the same matter, his answer will overrule his demurrer.

Allegations in a bill in chancery that plaintiff and his predecessor in
title made improvements on premises to which plaintiff claimed a
prescriptive title, and in which defendant claimed a half interest,
cut wood thereon and paid the taxes, are not demurrable on the
ground that thereby plaintiff acquired no right to deny defendant's
title, where these and other circumstances alleged, taken together,
are sufficient to afford a presumption of a conveyance from de-
fendant's predecessor to plaintiff's predecessor, as well as to show

an ouster of defendant's grantor, such as would ripen into title by adverse possession.

After having filed an amended cross bill, defendants in a suit in equity cannot be heard to complain that plaintiff is permitted by a supplemental bill, in the nature of a cross bill, to seek affirmative relief appropriate to the case made out by them in their amended cross bill.

Where plaintiff, in his original bill, alleged that he and his father before him owned and occupied a certain farm, but without setting out by what title, there was no departure when, in a supplemental bill, plaintiff alleged his title with particularity, and consistently with the earlier allegation of ownership.

Where plaintiff's evidence tended to show title to the premises in question in the grantor of his predecessor in title, to an undivided one-half by the record and to the other half by a lost grant, an exception to a finding of the chancellor, based upon a deed from such grantor to plaintiff's predecessor, on the ground that such deed was received on the understanding that it should be used as evidence only if a title should be shown which could be conveyed by the grantor, is without force.

A ground of objection, not raised at the trial, will not be considered in Supreme Court.

An exception to testimony which cannot possibly have prejudiced the excepting party is without merit.

Where it appears that one is in possession of real estate, it will be presumed that his possession is lawful, nothing to the contrary appearing.

Interference with the enjoyment of a right of way by one in possession under the owner of the land has the same effect, as an interruption of adverse possession, as would the same act by the owner himself, and bears upon the question of the continuous use of the right of way by the claimant thereof.

An inventory of an estate, made and filed by the administrators thereof, one of whom was intestate's sole heir at law and succeeded to all his property and was also defendant's grantor, wherein there is no mention of the land in question, which was claimed to have been inherited by defendant's grantor from the intestate, stands as a declaration against an existing interest made by defendant's grantor before attempting to convey the premises.

The admissions of a predecessor in title, made while the title was by hypothesis still in him, are not governed by the hearsay rule and

its exceptions, but are to be treated as primary evidence, and, on the ground of privity, stand as though made by the party opponent.

The test of the admissibility of an admission made by a predecessor in title is whether, if the one who has made the admission was asserting ownership of the premises, his admission in the nature of a disclaimer would be evidence against him.

Disserving declarations of a former owner of real estate made before he parted with the title are admissible against those claiming under him on any issue relating to title, ownership, or possession which may be proved by parol evidence.

Whether plaintiff's predecessor in title acquired ownership of the land in question in part through a presumptive grant is an issue provable by parol evidence.

An exception to a finding by the chancellor, made upon evidence not received under exception, is without merit.

Where it is material to show who paid the taxes upon certain premises in question, the grand list books, showing to whom they were listed for taxation, are competent evidence.

The entry by a grantee in a deed upon the premises described therein, nothing to the contrary appearing, will be presumed to be under the deed.

One tenant in common may acquire title by adverse possession against his co-tenant; but this presupposes an ouster, otherwise the possession of one is, in law, the possession of both.

In determining whether certain acts of one joint tenant are evidence of an ouster and possession adverse to another joint owner, much depends upon the circumstances of the entry, there being an important distinction between the case where a tenant in common entering or being in possession as such subsequently asserts a claim adverse to his co-tenant, and the case where the entry is accompanied by such adverse claim.

Where an ouster is asserted by one who has held possession for or with his co-tenant the presumptions are against him and can only be overcome by some overt and notorious acts of an unequivocal character, indicating an assertion of ownership of the entire premises to the exclusion of the right of the co-tenant.

Where the entry of a joint owner of real estate is not in subordination to the common title, he does not enter as a tenant in common, and, if he enters under a deed purporting to convey the entire premises, he is presumed to have entered under a claim of right to the whole.

Where an ouster by one tenant in common of his co-tenants has been

established, whether the subsequent possession is of a character to ripen into title depends upon the same facts as in a case of adverse possession where the question of co-tenancy is not involved.

A conveyance of the entire premises by one tenant in common, with entry thereunder by the grantee, claiming title of the whole, and notice to the other co-tenant of such claim, works an ouster of the latter and lays the foundation for acquiring title to the whole by adverse possession.

The payment of taxes by one co-tenant in possession is admissible on the issue of a presumptive grant to such co-tenant from the other joint owner of the premises.

The payment of taxes by the actual occupant of land is some evidence of the adverse character of the occupancy and, if continued over a long period unexplained, affords strong evidence that the possession was under a claim of right and adverse.

The payment of taxes by one tenant in common in possession will not alone show an ouster of his co-tenant, and may not tend to show it, the presumption being that in doing so he acted for himself and his co-tenant; but where the ouster is otherwise established, evidence of such payment is admissible as tending to characterize the payer's subsequent possession as being adverse.

Evidence that the relations between two tenants in common were very friendly and confidential is admissible upon the issue of a presumptive grant from one to the other.

Where evidence is not as matter of law too remote to be admissible, its admission, as against the objection of remoteness, lies in the discretion of the trial court.

The burden of proving that a right of way is adverse is upon the party alleging it.

Where the chancellor is sitting as trier of facts it is for him to say, in the exercise of a sound discretion, when and how far the subordinate facts upon which he rests his ultimate findings shall be reported.

If the evidence to support a finding made by a chancellor is not sufficient, or if the supporting evidence is not admissible, or if a material finding which the evidence compels is denied, the rights of the aggrieved party can be protected by proper exceptions, and, if an exception is taken which necessitates an examination of the evidence in Supreme Court, it is the duty of the chancellor, upon written request, to send up such portions thereof as the circumstances require.

A finding that a person must have frequently passed by a certain farm is supported by evidence that the farm was on the main road, four miles from his residence, and that he was a hotel keeper and livery man.

A party is not prejudiced by a finding which can be rejected without disturbing the decree against him.

It will not be presumed that a chancellor made an improper use of a fact found in determining the ultimate questions for decision.

A finding that one had no claim against the estate of a deceased person is supported by evidence that the records of the probate court showed no claim presented.

It is not necessary to support the presumption of a grant that the trier should believe and find that a conveyance was in fact executed, but it is sufficient if the evidence leads to a conclusion that the conveyance might have been executed and that its existence would be a solution of the difficulties arising from its non-execution.

In the absence of evidence of the actual execution of a deed of real estate, a conveyance may be presumed, when no facts are shown inconsistent with the supposed existence of such conveyance, and where the things done and omitted with regard to the property in controversy by the respective parties, for long periods of time after the supposed execution of the conveyance, can be explained satisfactorily only upon the hypothesis of its existence.

The circumstances of this case, *held*, to support the presumption of such a conveyance.

A deed of one tenant in common to a stranger, of the entire premises, with possession thereunder by such stranger claiming title to the whole, coupled with notice to the other co-tenant, affords a sufficient basis for a finding of an ouster of the latter.

Where there is evidence to afford the basis of an inference that a co-tenant had notice of an adverse claim to the entire premises by a grantee of the whole under a deed of the other co-tenant, a finding of such notice will not be disturbed.

In order to charge a co-tenant with notice of an adverse claim to the entire premises, it is sufficient if the acts of adverse possession are such in their nature and attending circumstances that one reasonably attentive to his own interests would thereby know that an adverse right is being asserted.

An exception to a conclusion stated in a chancellor's findings of facts, based upon and supported by facts and circumstances also stated therein, will not be sustained.

In construing the record to determine whether certain evidence was received under exception, all intendments are against the exceptor.

Where it appeared that a tenant in common had given a deed of the whole premises to a stranger, who occupied thereunder claiming title, with notice to the other co-tenant, without objection by the latter, and that the land had never been listed to the latter for purposes of taxation, the fact that the latter was a careful business man was a circumstance to be taken into consideration, with the other facts and circumstances, on the issue of a presumptive grant from him to his co-tenant.

Where a question has been decided in Supreme Court upon a ground not argued, the Court will not, on motion for reargument, reopen the case to give the unsuccessful party opportunity to debate the matter, no error being pointed out. .

In order to effect an ouster of a co-tenant by entry and claim of title under a deed of the entire premises given by the other co-tenant, either actual notice to the former of the claim, or circumstances from which notice will be presumed is required.

*Carpenter* v. *Hollister*, 13 Vt. 553, distinguished.


APPEAL IN CHANCERY. Heard on issues presented by the pleadings, facts found by the chancellor and defendant's exceptions thereto, in vacation after the June Term, 1916, Windsor County, *Fish*, Chancellor. Decree for plaintiff. Defendants appealed. The opinion states the case.

*March M. Wilson* for plaintiff.

*Charles Batchelder* for defendants.

TAYLOR, J. The plaintiff and the defendant Abbie E. Moody occupy adjoining farms in Royalton. The defendant Henry H. Rogers resides with and assists the said Abbie E. in managing her farm. The plaintiff's farm is sometimes referred to as the Lyman farm and defendants' as the Fay farm. A wood lot connected with defendants' farm is so situated that it can be reached most conveniently by crossing plaintiff's meadow land.

In his original bill the plaintiff seeks to have the defendants enjoined from crossing his land in going to and from said wood lot. By a joint and several answer and cross bill the defendants

set up a prescriptive right of way across plaintiff's land and ask that he be enjoined from interfering therewith. Issue was joined on the bill, answer and cross bill and the case came on for hearing before the chancellor. At the opening of the hearing the defendant Abbie E., had leave to file an amendment to the answer and cross bill in which she averred that, since the filing of the original answer and cross bill, she had acquired by purchase and conveyance from one Denison B. Woodward an undivided interest in the premises occupied by the plaintiff which entitled her to the enjoyment of said premises in common with the other joint owners, and she asked that her title thereto be confirmed. The chancellor proceeded to hear the evidence relating to the right of way, reserving to the plaintiff the right to answer the amended pleadings. Later the plaintiff filed papers entitled "answer to amendment to cross bill" and "supplemental bill." In the former he reaffirmed his statement as to the title and ownership of the farm and denied the allegations of the amended cross bill, except that he acknowledged information and belief that Abbie E. had obtained and placed on record a quitclaim deed from said Woodward purporting to convey some interest in the premises. In the supplemental bill he alleged that the de-' fendant Abbie E. now claims to be the owner in fee of an undivided half interest in the Lyman farm; that she had obtained and placed on record a quitclaim deed from one Denison B. Woodward, son and sole heir at law of Charles H. Woodward, purporting to convey such interest; that she has no interest in said farm, notwithstanding said deed, for the reason that said Woodward had no interest therein at the time of the conveyance; and that said deed is a cloud upon his title. The bill sets out in detail the record title of the farm which shows that the title of record to an undivided half interest was at one time in Dudley C. Denison and to the other half in his son-in-law, Charles H. Woodward. It is further alleged that said Denison subsequently conveyed the whole of said farm by warranty deed to the plaintiff's father, Robert Waterman, that plaintiff believes that said Charles H. Woodward took his deed of a half of said farm in behalf and as agent of said Denison, at his request and for his benefit; that said Denison conveyed the farm to plaintiff's father with the full knowledge and approval of said Woodward; that it was agreed that said Woodward should execute necessary conveyances to give said Denison and his grantee full and perfect

title, which the said Woodward did execute, but through some accident or mistake such conveyance was either not fully perfected or was not duly recorded. Further circumstances are alleged tending to support a presumptive grant from Woodward to Denison. The prayer of the bill is that the defendant Abbie E. be enjoined from asserting any right, title or interest in and to said farm; that the deed from the said Denison B. Woodward to the defendant be decreed of no effect; and that the plaintiff's title be confirmed and validated against the defendant Abbie E., and all persons claiming under her.

The defendants filed an answer to the "supplemental bill," craving the benefit of a demurrer to certain allegations thereof and, on certain grounds, to the whole bill. The cause coming on for further hearing, the chancellor overruled the demurrer, reserving the benefit thereof to the defendants at the final hearing. The defendants excepted to certain rulings of the chancellor during the trial, to certain findings of the chancellor as not being supported by the evidence and to the refusal of the chancellor to find in accordance with certain requests. On the facts found the chancellor decreed that the defendant Abbie E. has no right of way across plaintiff's land and perpetually enjoined the defendants, their servants and agents, from crossing the same; that the deed from Denison B. Woodward to the defendant Abbie E. is of no effect and shall be held for nothing, and that as against the said Abbie E. and those claiming under her the plaintiff's title to said farm be established and confirmed; and that the defendants pay the plaintiff fifteen dollars damages for the wrongful use of his land under the claimed right of way. The case is here on defendants' appeal.

The points of defendants' demurrer have been argued in detail and at considerable length, but it will not be necessary to treat the questions *seriatim.* As to twelve of the thirteen points of special demurrer the defendants answered, either by admitting or denying the allegations of the bill or alleging want of knowledge and putting plaintiff to his proof, and at the same time set out special matters by way of demurrer, craving the same benefit thereof as though they had formally demurred. If we treat such claim of special matter as a demurrer, it does not avail the defendants. They could not at the same time both answer and demur to the same matter. The regular modes of defence to a bill are disclaimer, demurrer, plea or answer. It is not essential

that the entire bill be met by the same mode of defence. Thus, a defendant may demur as to part, plead as to part, disclaim as to part and answer the residue. Chan. Rule 14; 2 Dan. Ch. Pr. 349; 1 Whit. Eq. Pr. § 213. Where such course is adopted it is essential that the pleading designate with precision the portion of the bill to which it is intended to apply and care should be taken not to cover any portion by two modes of defence, the general rule being that one may not at the same time demur and plead to, or demur and answer the same matter. See 16 Cyc. 259 where the cases are collected. With us the general rule has certain modifications. No demurrer is to be held bad because the answer extends to some part of the matter that is covered by the demurrer. Chan. Rule 19. A defendant may insist in his answer on any special matter that goes to the merits of the bill with the same benefit as if he had formally demurred to the bill, (Chan. Rule 15), in which case the demurrer is for consideration as if it stood alone, (*Holt* v. *Daniels,* 61 Vt. 89, 17 Atl. 786), and must be brought forward for hearing before the case is heard on its merits, otherwise it is waived. *State* v. *Massey,* 72 Vt. 210, 214, 47 Atl. 834. But this rule does not contemplate the joining of inconsistent pleadings except such as go to the merits of the whole bill. With this exception there must be no overlapping of defences; and, if a defendant answers a part of the bill and then demurs to the same matter, his answer will overrule his demurrer. *Holt* v. *Daniels,* 61 Vt. 89, 93, 17 Atl. 786; *Wade* v. *Pulsifer,* 54 Vt. 45, 71; 16 Cyc. 280.

The remaining instance of special demurrer challenges allegations that the plaintiff and his immediate predecessor in title made extensive improvements and additions to the premises, cut wood and lumber and paid all the taxes assessed thereon, on the ground that by so doing the plaintiff has acquired no right to deny the title of the defendant Abbie E., to an undivided half of said farm. It is argued that the facts here alleged are not inconsistent with occupation in the right of his co-tenant and do not entitle him on that account to lay claim to an ouster. But the supplemental bill is not based upon the theory of an ouster alone, but as well upon that of a presumptive grant, vesting the whole title in plaintiff's grantor; and the questioned allegations are but part of many circumstances alleged as the basis of an inference that Denison, prior to his deed to plaintiff's father, became the sole owner of the premises. All the circumstances

alleged taken together are sufficient to afford the basis of a presumption of a grant, and as well to show an ouster of defendant Abbie E.'s grantor such as in the lapse of time would ripen into title by adverse possession. See *Townsend* v. *Downer's Est.*, 32 Vt. 183, 211.

The defendants conclude their answer with the claim that the major portion of the supplemental bill consists of statements tending to establish that plaintiff is the owner of an undivided half of the premises by deed and of the other half by prescription, which, considered in connection with the allegations in his original bill, shows an attempt to make a new bill, based on different grounds as to title; and further that, though all the plaintiff therein alleges be true, he has an adequate remedy at law; and they crave the same benefit thereof as though they had formally demurred. Treating this, as counsel have done, as a demurrer to the supplemental bill, it raises the question of want of equity and whether there is a departure from the case made in the original bill. But neither claim is tenable. If there was such a departure it was occasioned by the defendants' amended cross bill wherein Abbie E. seeks to avail herself of this proceeding to confirm her record title as co-tenant of the plaintiff. Having invoked the aid of equity defendants cannot be heard to complain that the plaintiff is permitted by a supplemental bill, in the nature of a cross bill, to seek affirmative relief appropriate to the case made by them in their amended cross bill. Besides, there is no departure in the allegations as to title. In the original bill it is alleged that plaintiff, and his father before him, had for many years "owned" and occupied the Lyman farm, but by what title was not alleged. In the supplemental bill the title by which plaintiff owns the premises is alleged with particularity and is consistent with the earlier allegation of ownership. It is not necessary to consider whether the plaintiff would be confined to allegations of title in the original bill, if such there were, where the departure was to meet new matter introduced by the cross bill, for such is not this case. We hold that the demurrer was properly overruled.

The defendants argue an exception to the chancellor's findings because he received in evidence the deed from Denison to plaintiff's father and the deed from the latter to the plaintiff, on the ground that the deeds were not admissible under the pleadings. The deeds were offered to show plaintiff's title and

were warranty deeds purporting to convey the whole of the Lyman farm. When offered, defendants' counsel objected unless received with the understanding that a title be shown which could be conveyed by Denison, saying that they had no objection if received with that understanding to be used as evidence only if the connection was made. The deeds were received in accordance with this suggestion and there was no exception. It is now said that the deeds were received under a promise to connect them with the record title, but not so. The condition of the record title was disclosed to the chancellor in that connection and the "understanding" under which the deeds were admitted must have related to plaintiff's proposal to show title in Denison other than by the record. Waiving the objection that there was no exception to be saved by the exception to the findings, defendants' claim is without merit. If for no other reason, plaintiff's evidence tended to show title in Denison, to an undivided half by the record and to the other half by a lost grant, so the "understanding" was made good.

Defendants rely upon an exception to certain testimony given by plaintiff's father, Robert Waterman, concerning a talk with a Mrs. Fay, wife of a former owner of the Fay farm. The ground of objection argued, which is that the witness was blind and did not know Mrs. Fay, was not raised at the trial and so cannot be considered here.

Plaintiff was permitted to testify under exception that during the period they had occupied the Lyman farm neither he nor his father and brothers recognized any right on the part of the owner of the Fay farm to use the roadway. The objection was general. It is now argued that if the plaintiff had a right to state whether or not he "recognized" any such right, it was error to permit him to state what the others "recognized," that at most being a state of mind. If the point was saved by a general objection, which we do not decide, it is not profitable to pursue the inquiry, for the evidence fully disclosed all that was said and done by the parties affecting a right of way by prescription and plaintiff's testimony could not possibly have prejudiced the defendants.

Plaintiff was permitted to show by one Spaulding that a man by the name of Wilder lived on the Lyman farm for a time and had pieces of corn and potatoes where the claimed right of way crossed the farms, against the objection that any control of

the premises was immaterial unless it was the act of the owner of the fee.  It appeared that Wilder was at the time in possession of the Lyman farm and it will be presumed that his possession was lawful, nothing to the contrary appearing.  The objection cannot be sustained.  Interference with the defendants' enjoyment of the right of way by one in possession under the owner would have the same effect, as an interruption of adverse possession, as would the same act by the owner himself.  Besides, the evidence was not immaterial because it bore on the question of the continuous use of the way by the defendants, who assumed the burden of establishing the way by prescription.

Plaintiff's exhibit 5 was an inventory of the estate of Charles H. Woodward filed in the probate court by the administrators, one of whom was Denison B. Woodward, son of the intestate, from which it appears that the Lyman farm was not included in the inventory of the intestate's real estate.  It was received against the objection that it had no tendency to show title in the plaintiff nor an ouster, and the defendants saved an exception. The question is argued as though the inventory were made by strangers to the title, while it derives its evidentiary force, if any, from the fact that Denison B. Woodward was intestate's sole heir at law and succeeded at his death to all his real estate. So the inventory stands as a declaration against an existing interest made by defendant Abbie E.'s predecessor in title before attempting to convey the premises.  The same question is raised by exception to the evidence of certain witnesses who testified to declarations made by Charles H. Woodward, while the record title was in him, that a certain building lot was all the real estate he owned.

The defendants insist that the declarations of a former owner of real estate are not admissible against his successor in title for the purpose of impeaching a deed or defeating a record title. *Carpenter* v. *Hollister*, 13 Vt. 553, 37 Am. Dec. 612, is relied upon in support of this claim.  That was an action of ejectment.  The plaintiff was an administrator and the defendants based their claim of title on a deed from plaintiff's intestate to one Mackress, their immediate predecessor in title.  The issue was whether intestate was insane at the time he executed the deed to Mackress and so incapable of making a valid deed. Evidence was received of admissions made by Mackress, while in possession of the premises under his deed, to prove intestate's

insanity. This was held to be error on the ground that under our registry system, title to land appears of record; and that to admit concessions impeaching the deed would permit the record to be contradicted or qualified by parol. *Phillips* v. *Laughlin*, 99 Me. 26, 58 Atl. 64, 105 Am. St. Rep. 253, 2 Ann. Cas. 1, cited to the same point, is much to the same effect. There the plaintiffs claimed title to the premises in question as heirs of John Phillips, and the defendant under foreclosure of a mortgage executed by Catherine Phillips, supported by a deed from John Phillips to Catherine. The issue was whether the latter deed was a forgery. It was held that the declarations of Catherine Phillips, made while the record title was in her, as to the validity of her deed from John were not admissible against the defendant.

In the latter case the court regarded the evidence as within the hearsay rule and not admissible under any of its exceptions. Mr. Wigmore points out that much of the confusion in the decided cases dealing with declarations or admissions relating to title to land results from failure to discriminate between cases where the hearsay rule does and those where it does not apply. He makes it clear that the admissions of a predecessor in title, made while the title was by hypothesis still in him, are not governed by the hearsay rule and its exceptions. 2 Wig. on Ev. §§ 1082, 1459. They are to be treated as primary evidence; and, on the ground of privity, stand as though made by the party opponent. *Hayward Rubber Co.* v. *Duncklee*, 30 Vt. 29; *Miller* v. *Bingham*, 29 Vt. 82; *Hines* v. *Soule*, 14 Vt. 99. The distinction referred to was not regarded in *Carpenter* v. *Hollister*, as much of the opinion is devoted to the discussion of cases involving the hearsay rule.

The test of admissibility is whether, if the one who has made the admission was asserting ownership of the premises, his admission in the nature of a disclaimer would be evidence against him; for whenever the admissions of one having or claiming title to real estate would thus be competent against him, they are competent against persons subsequently deriving title through or from him. *Chadwick* v. *Fonner*, 69 N. Y. 404; note, 134 Am. St. Rep. 613.

The generally accepted rule is that disserving declarations of a former owner made before he parted with the title are admissible against those claiming under him on any issue relating to title, ownership or possession which may be proved by parol

evidence. For the cases supporting this principle see note, 26 L. R. A. (N. S.) 84; 1 R. C. L. 524; note, 134 Am. St. Rep. 610; 16 Cyc. 986. Mr. Wigmore phrases the principle thus: ''When by the hypothesis of the party himself his title as now claimed is identical with that of another person, as a prior holder, the statements of that other person, made during the time of his supposed title, are receivable against the party as admissions.'' 2 Wig. on Ev. § 1081. See also 2 Chamb. on Ev. §§ 1329, 1334.

The rule was not recognized in many of the earlier cases elsewhere, nor authoritatively in this State until *Hayward Rubber Co.* v. *Duncklee,* 30 Vt. 29. See 2 Wig. on Ev. § 1080. *Hines* v. *Soule,* 14 Vt. 99, occupies a unique position. Judge Bennett, who prepared the opinion, arrived at the conclusion now generally accepted, after an extended review of the authorities; but as the court was then constituted it was necessary to the final disposition of the case that there be a unanimous decision, so to enable the case to be ended, Judge Bennett yielded to the opinion of his two associates that such admissions could not be shown against privies in title. The decision in *Hines* v. *Soule* was expressly overruled in *Hayward Rubber Co.* v. *Duncklee* without argument or citation of authorities. So while the former case is classed as overruled, the opinion states the law of the case that overruled it. See *Alger* v. *Andrews,* 47 Vt. 238.

The apparent confusion in our earlier cases dealing with declarations in disparagement of title is due in part at least to the change of view indicated above; and *Carpenter* v. *Hollister, supra,* as an authority, must be read with this change in mind. What it decided was that an admission tending to impeach the deed relied upon to vest title in defendant's predecessor was not admissible because of the parol evidence rule. We have no occasion at present to inquire as to the soundness of that holding, since here there can be no doubt that the issues relating to title were provable by parol evidence. This being so the admission of the Woodwards was properly received against the defendants.

The defendants excepted to the findings because the chancellor admitted evidence to the effect that Charles H. Woodward was a careful and prudent man. But the evidence was not received under exception; hence, the exception to the findings is without merit.

The defendants excepted to the findings on the ground that

the chancellor erred in admitting in evidence the grand list books of the town of Royalton for the period during which the plaintiff and his father owned the premises, the objection being that the books were incompetent to establish any material issue in the case. But when it is material to show who paid the taxes on the premises in question the grand list books showing to whom they were listed for taxation are competent evidence. *Carter* v. *Clark*, 92 Me. 225, 42 Atl. 398; *Pasley* v. *Richardson*, 119 N. C. 449, 26 S. E. 32. See *Ripton* v. *Brandon*, 80 Vt. 234, 67 Atl. 541.

It will simplify the consideration of a further objection to this evidence, and as well some of the exceptions that will follow, to notice at this point some additional facts relating to the title, and to consider in a general way the rules of law applicable when the defence of adverse possession is relied upon by one sustaining the relation of a tenant in common.

In the spring of 1889 Dudley C. Denison and Charles H. Woodward became joint owners of the Lyman farm in the following manner: The title to an undivided half of said farm then stood in the estate of one Marcy under a decree of foreclosure that had become absolute against Lyman, Denison and one Charles Belknap. The title of the other half was involved in foreclosure proceedings brought by said Belknap against Denison whose interest was that of a second mortgagee. Belknap had acquired a first mortgage on this half of the farm and also held a quitclaim from the mortgagors of their equity of redemption. Denison was claiming that Belknap's mortgage interest became merged in the equitable estate conveyed to him by the mortgagors, leaving his (Denison's) mortgage the first to be satisfied. At the February Term, 1889, of this Court for Windsor County it was decided that Belknap's mortgage was not merged in his equitable estate and a decree of foreclosure passed against Denison to become absolute March 1, 1889. *Belknap* v. *Denison*, 61 Vt. 520, 17 Atl. 738. On February 18, 1889, Woodward took a quitclaim deed of Belknap's interest for the expressed consideration of $850. On March 30, 1889, Denison acquired title to the portion of the premises held by Marcy's estate, and on December 21, 1889, he conveyed the whole of said farm to plaintiff's father by warranty deed containing the usual covenants. The deed was the same day filed and recorded in the land records of the town of Royalton, and Waterman immediately went into possession.

Nothing to the contrary appearing, it will be presumed that the entry was under his deed from Denison.

The nature of Waterman's entry has an important bearing upon his acts in possession. It cannot be questioned that one tenant in common may acquire title by adverse possession against his co-tenant; but this presupposes an ouster, otherwise the possession of one is, in law, the possession of both. *Owen* v. *Foster,* 13 Vt. 263.

In determining whether certain acts of one joint owner are evidence of an ouster and possession adverse to another joint owner, much depends upon the circumstances of the entry. There is an important distinction between the case where a tenant in common, entering or being in possession as such, subsequently asserts a claim adverse to his co-tenant, and the case where the entry is accompanied by such adverse claim.

Where an ouster is asserted by one who has held possession for or with his co-tenant the presumptions are against him and can only be overcome by some overt and notorious act or acts of an unequivocal character, indicating an assertion of ownership of the entire premises to the exclusion of the right of the co-tenant. *Ball* v. *Palmer,* 81 Ill. 370; *Katz* v. *Belz,* 178 Ill. 434, 53 N. E. 367. In such case the position of one tenant in common toward his co-tenant is, with respect to adverse possession, somewhat analogous to that of a tenant toward his landlord. *Chandler* v. *Ricker,* 49 Vt. 128.

But the situation is entirely different when the entry is not in subordination to the common title. Then the joint owner does not enter as a tenant in common. If he enters under a deed purporting to convey the whole premises, he is presumed to have entered under a claim of right to the whole; in other words, to have entered under the title which his deed upon its face purports to convey. *Joyce* v. *Dyer,* 189 Mass. 64, 75 N. E. 81, 189 Am. St. Rep. 603. See *Chandler* v. *Ricker,* 49 Vt. 128, 133. There is little if any dissent from the proposition that when a tenant in common conveys to a stranger to the title by a conveyance appropriate in form to transfer an estate in severalty and the grantee enters into exclusive possession of the premises thereunder as a claimant in severalty, this is an ouster of the other co-tenants of which they must take notice and which, if sufficiently long continued, bars them of all right in the property. Note, 109 Am. St. Rep. 612; see *Whitney* v. *French,* 25 Vt. 663,

667. When an ouster has been established, whether the subsequent possession is of a character to ripen into title, depends upon the same facts as in a case of adverse possession where the question of co-tenancy is not involved.

Denison's conveyance to Robert Waterman of the whole farm by warranty deed, with Waterman's entry thereunder claiming title to the whole, and notice to Woodward of such claim, would work an ouster of Woodward and lay the foundation for acquiring title to the whole farm by adverse possession. *Roberts* v. *Morgan,* 30 Vt. 319, 325; *Holley* v. *Hawley,* 39 Vt. 525, 532, 94 Am. Dec. 350; *Kirley* v. *Mayo,* 13 Vt. 103.

It was further urged against the admissibility of the grand list books that the mere payment of taxes by one co-tenant in possession was not evidence of an ouster. The evidence was certainly admissible on the issue as to a presumptive grant. Woodward's failure to pay the taxes and their payment by Waterman would be circumstances tending to support such a claim. *Holtzman* v. *Douglas,* 168 U. S. 278, 42 L. ed. 466, 18 Sup. Ct. 65. And in the circumstances of this case the evidence was admissible on the issue of adverse possession. Such evidence is generally admissible on this issue, not as an act of possession but as evidence of a claim of title. *Tillotson* v. *Prichard,* 60 Vt. 94, 14 Atl. 302, 6 Am. St. Rep. 95; *Paine* v. *Hutchins,* 49 Vt. 314. When the taxes are paid by the actual occupant of the land it is some evidence of the adverse character of the occupancy. *Miller* v. *Mullen,* 95 Me. 400, 49 Atl. 871; *Daly* v. *Lewiston & Auburn Children's Home,* 113 Me. 526, 95 Atl. 219. And if continued over a long period unexplained, it affords strong evidence that the possession was under a claim of right and adverse. *Holtzman* v. *Douglas, supra; Fletcher* v. *Fuller,* 120 U. S. 534, 30 L. ed. 759, 7 Sup. Ct. 667. Where the payer is a tenant in common it would not alone show an ouster and might not have such a tendency, the presumption being that in so doing he acts for himself and his co-tenant. *Downer's Adm'r* v. *Smith,* 38 Vt. 464. But the fact of an ouster having been otherwise established, as in this case, the evidence would be admissible as tending to characterize the subsequent possession.

The defendants' forty-second and forty-third exceptions, which are briefed together, relate to evidence of the friendly and confidential relations existing between Denison and his son-in-law. It was objected that the evidence was immaterial

and had no legitimate tendency to establish any of plaintiff's claims. The only case cited in support of these exceptions is *Heileg* v. *Dumas,* 65 N. C. 214, where evidence of the friendly feelings existing between two of the joint obligors of a bond, offered for the purpose of proving that one of them, who denied the fact, signed the bond, was held inadmissible on the ground of remoteness. We think that evidence that the relations between Denison and Woodward at the time in question were "very friendly" and "perfectly confidential" would tend to make more probable plaintiff's claim that when Woodward took his deed in the circumstances detailed above, he was acting in Denison's interest, and with the other circumstances in the case tends to support the presumption of a grant. *Comstock's Adm'r* v. *Jacobs,* 86 Vt. 182, 84 Atl. 568; *Camp* v. *Page,* 42 Vt. 739; *Kimball* v. *Locke,* 31 Vt. 683.

The evidence was not as matter of law too remote to be admissible; so, as against the objection of remoteness, its admission would be in the discretion of the trier. *Green* v. *LaClair,* 89 Vt. 346, 95 Atl. 499.

This brings us to the consideration of the exceptions to the chancellor's findings. Defendants excepted to the failure of the chancellor to find and report in accordance with a request that, in the event of a finding that any owner or occupant of the premises now owned by the defendant Abbie E., sought or obtained permission to use the way in question, the evidence or other basis of such finding be reported, on the ground that it was essential to the support of the finding of permission granted that the time and details of the transaction be made to appear. But the burden was on the defendants to show that the use of the way was adverse, and on this question the chancellor finds: "The defendants answer that they have a way by prescription. I am unable to find for them on this claim, but incline to the opinion that the use of the way was permissive and not under claim of right." Besides, in any event it was not reversible error for the chancellor to omit to find in accordance with this request. *In re Bugbee's Will,* 102 Atl. 484; *Allen's Adm'r* v. *Allen's Adm'r,* 79 Vt. 173, 186, 64 Atl. 1110. When the chancellor is sitting as trier of the facts it is for him to say, in the exercise of a sound discretion, when and how far the subordinate facts on which he rests his ultimate findings shall be reported. Lest this statement should be misunderstood, it may be well to

add that if the evidence to support a finding made is not sufficient, or if the supporting evidence is not admissible, or, again, if a material finding which the evidence compels is denied, the rights of the party aggrieved can be protected by proper exceptions. The proceedings in this regard are similar to those when the trial is by a special master. *Rowley* v. *Shepardson,* 90 Vt. 25, 32, 96 Atl. 374. If an exception is taken which necessitates an examination of the evidence by this Court, it would be the duty of the chancellor to send up such portions thereof as the circumstances require, when the party against whom the decision is so requests in writing. P. S. 1265.

Defendants' ninth request was of the same character and what we have already said disposes of the exception to its refusal. In neither case is it suggested that there was no evidence to support the finding upon which the request was dependent.

Three of defendants' exceptions to the findings relate to the matter of taxes. The chancellor found that the Watermans paid the taxes on the Lyman farm ever after their purchase in 1889, a period of 26 years, and that Charles H. Woodward paid no taxes thereon, nor was the farm listed to him. It is claimed there was no evidence to support these findings. What we have already said concerning the exception to the admission of the grand list books is an answer to this objection. Manifestly the books showed that the land was not listed to Woodward for taxation but was listed to the Watermans. Nothing further appearing, the natural inference would be that the Watermans, and not Woodward, paid the taxes.

The defendants excepted to the statement in the findings that Charles H. Woodward "must have passed by the farm frequently," as unsupported by the evidence. True, there was no direct evidence as to this matter; but the farm was on the main road from Royalton to Bethel and only about four miles from Woodward's place of business. He was a hotel keeper and livery man. The probability that he passed the farm frequently would be strong, and that is all that the chancellor's statement amounts to. Whether he did or not would, in the circumstances, be of little moment.

The defendants excepted to the findings that Woodward "had no claim against Denison's estate" on the ground that it is not supported by the evidence and is wholly immaterial. If the finding was immaterial, the defendants would not be prej-

udiced, as it can be rejected without disturbing the decree. If, as the defendants say in their brief, the fact made weight for them, we cannot presume that the chancellor made an improper use of it in determining the ultimate questions for decision. It was supported by the evidence, for from the records of the probate court showing the settlement of Denison's estate, it appeared that Woodward presented no claim. The finding means no more than this; as the chancellor concludes the finding excepted to with, "as appears by the records of the probate court."

The defendants excepted to the finding that there was some arrangement between Charles H. Woodward and Denison whereby Denison became the owner of said farm prior to his conveyance to Robert Waterman, on the ground that there was no evidence sustaining the finding. This is a fragment of the chancellor's finding relating to a presumptive grant. It continues: "Whether a deed was given and lost, or given and not recorded, or whether the parties failed to have the deed drawn and executed, I cannot find from any facts before me."

It is not necessary to support the presumption of a grant that the trier should believe and find that a conveyance was in fact executed. It is sufficient if the evidence leads to the conclusion that the conveyance might have been executed and that its existence would be a solution of the difficulties arising from its non-execution. *Fletcher* v. *Fuller*, 120 U. S. 534, 30 L. ed. 759, 763, 7 Sup. Ct. 667; *Trustees Cal. Co. Gr. Sch.* v. *Howard*, 84 Vt. 1, 11, 77 Atl. 877; *Townsend* v. *Downer's Est.*, 32 Vt. 183. It was said in *Edson* v. *Munsell*, 10 Allen (Mass.) 557, that the presumption is not founded on a belief that the grant has actually been made in a particular case, but on the general presumption that a man will naturally enjoy what belongs to him, the difficulty of proof after lapse of time and the policy of not disturbing long-continued possession. To the same effect is *Tracy* v. *Atherton*, 36 Vt. 503, 511.

Though a presumption of a deed is one that may be rebutted by proof of facts inconsistent with its supposed existence, yet when no such facts are shown, and the things done and the things omitted with regard to the property in controversy by the respective parties for long periods of time after the supposed execution of the conveyance can be explained satisfactorily only upon the hypothesis of its existence, then the trier would be at liberty to presume a conveyance and thus quiet the possession.

*Fletcher* v. *Fuller, supra.* When the actual execution of a deed is established nothing further would be required than proof of its contents and there would be no occasion for the exercise of any presumption on the subject. It must then be evident that the presumption is indulged only when there is uncertainty as to whether the grant has actually been made. It is enough to say that the circumstances detailed by the chancellor on which he bases his findings as to a grant, many of which have been referred to in this opinion, make a typical case for presuming a conveyance.

The defendants excepted to the finding that there was an ouster of Woodward, on the ground that there was no evidence tending to establish the fact. But, as we have seen, Denison's deed to Waterman of the whole farm and possession thereunder claiming title to the whole, coupled with notice to Woodward, affords a sufficient basis for the finding.

It was further objected that the finding was inconsistent with that of some sort of an arrangement between Woodward and Denison whereby the latter became the owner of the whole farm. The chancellor's findings in this regard are evidently in the alternative. Immediately following the finding as to a lost grant quoted above he says: "But I do find beyond any reasonable doubt that there was an ouster of Woodward and that he must have had knowledge at the time the plaintiff's father took possession of the farm of his exclusive ownership therein and of acts such as would be inconsistent with and in exclusion of the continuing rights of Woodward and such as would amount to an ouster as between landlord and tenant."

What the chancellor says amounts to saying if there was no such conveyance there was at least an ouster of Woodward such as would predicate the claim of adverse possession. The evidence afforded a sufficient basis for the presumption of a grant, but it was in the circumstances for the trier to find. If he was not satisfied, from the evidence, to presume the grant, it still supported plaintiff's claim of adverse possession. The defendants say that it is not shown that Woodward had notice that the Watermans were claiming adversely. But there was ample evidence to afford the basis of such an inference and nothing more is required. It is sufficient that the acts of adverse possession were such in their character and attending circumstances that a man reasonably attentive to his own interests would have known

that an adverse right was being asserted. Note, 109 Am. St. Rep. 626.

This disposes of defendants' further exception to the finding that Woodward must have known at the time plaintiff's father took possession of the farm that his claim of ownership was adverse.

The defendants excepted to the statement in the findings that Woodward had knowledge of acts of plaintiff's father "such as would be inconsistent with and in exclusion of the continuing rights of Woodward and such as would amount to an ouster as between landlord and tenant," on the ground that the statement is but a conclusion of law and not a finding of fact, and especially on the ground that no finding is made as to what the "acts" referred to were. The statement was a conclusion, but it was based upon facts and circumstances which the chancellor had detailed; and the conclusion, whether of law or of fact, was amply supported by the facts already found.

Several other exceptions to the findings were saved, but they are either sufficiently covered by what has already been said or are too plainly without merit to require special attention. The record discloses no ground of reversible error and the defendants' exceptions were properly overruled.

The defendants argue that they are entitled to a decree on both branches of the case. But their argument is predicated on the assumption that inadmissible evidence was received and that many of the findings were unsupported. They do not claim that on the findings made, there should be a different decree.

*Decree affirmed and cause remanded.*

### On Motion for Reargument.

After the foregoing opinion was handed down counsel for the defendants had leave to file a motion for reargument, pending which the mandate has been withheld. The motion brings to our attention no matters not already fully considered.

It is asserted that the question argued concerning the testimony of Robert Waterman was raised by the exception taken. But not so, as an examination of the transcript will show. The defendants excepted to the findings because the testimony in question was received, on the ground stated in opposition on

certain specified pages of the transcript. Therefrom it appears that it being offered to show by the witness in substance that directly after he bought the Lyman farm Mrs. Fay came to him and asked permission to use the way to get wood in the winter time, defendants objected on the ground that it did not appear that she had any authority from her husband to make the request—that it would not be evidence against him—and "that it was not in the line of demands characterizing possession." Thereupon it was made to appear that Mr. Fay had died shortly before the request was made; and the chancellor admitted the evidence and gave the defendants an exception, though none was asked. No other objection was made nor exception taken.

Whether the testimony to the effect that Charles H. Woodward was a careful business man was or was not received under exception, depends upon the construction which should be given to the record, having in mind that all intendments are against the exceptor. The exception sought to be saved related to the testimony of one Harrington and the ground of the exception filed was that the testimony was incompetent. We quote from the transcript so far as material to this question:

"Q. I'll ask you now, from your knowledge and experience with Mr. Woodward what kind of a business man he was?

Batchelder: Object to that question.

Court: Take his answer and note an exception.

A. I should say that he was a man that would look after his business pretty close.

Batchelder: Move the answer be stricken out.

Court: Well, it may not be responsive. Do you think it is responsive?

Wilson: Oh no. I asked whether he was a careful business man or not.

Court: What do you say to that, Mr. Harrington?

A. I should say he was."

Counsel's reply to the chancellor's question evidently referred to what he desired to show, for no such question had been asked. The objection interposed, being general, may as well have been to the form of the question as to subject matter. Applied to the question objected to, the answer complained of would be meaningless and the question which elicited their answer was not objected to. In this situation it is not to be inferred that

the exception noted was any broader than its terms would indicate. Such was and is our construction of the record.

But if the question argued had been raised, it would not avail. That Mr. Woodward was a careful business man would be a circumstance to be considered with the other circumstances in the case on the issue of a presumptive grant.

It would not seem that the third ground of the motion can be seriously entertained. The complaint is that in disposing of the exception to the admission of the grand list books the Court has sustained the ruling below on a ground not argued by the plaintiff and as to which defendants have had no opportunity to be heard. It not infrequently happens that reasons for sustaining a ruling exist that are not advanced in argument; and to reopen the argument merely to give counsel an opportunity to debate a matter which the Court on deliberation has found decisive of the question, when, as here, no error is pointed out, would, to say the least, be a novel proceeding.

The defendants' brief in support of the motion is largely devoted to the fourth ground. As to this, the defendants misconceive the opinion as well as the bearing of our earlier cases on the question for decision. The holding of the opinion is, that the deed of the whole farm to plaintiff's father with entry thereunder claiming the whole *and notice to Woodward of the claim* operated to effect an ouster. It is not held that placing the deed on record would be constructive notice of an adverse claim nor that mere knowledge of the conveyance would be sufficient notice of such claim. The opinion is consistent with the rule that either actual notice, or circumstances from which notice will be presumed, is required. The cases referred to go no further than this and are in harmony with our present holding.

*Motion overruled.*